**WELDON F. STUMP & CO., INC., Plaintiff,**

v.

**DELTA METALFORMING CO., et al., Defendants.**

No. 3:91CV7532.

United States District Court, N.D. Ohio, W.D.

June 19, 1992.

Gregory Roether Elder, Barkan & Robon, Toledo, Ohio, for plaintiff.

Michael G. Sanderson, Shumaker, Loop & Kendrick, Toledo, Ohio, Jeffrey C. Mateer, Rodney H. Lawson, Carrington, Coleman, Sloman & Blumenthal, Dallas, Tex., for defendants.

## OPINION AND ORDER

WALINSKI, Senior District Judge.

This cause is before the Court on defendants' motion to dismiss, or in the alternative, to transfer or stay, plaintiff's opposition thereto and defendants' reply. This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

Plaintiff, Weldon F. Stump and Company, Inc. (Stump), entered into an agreement to sell a used tube rolling mill, along with assorted accessories, attachments and equipment, to defendant Dallas Tube &

Rollform, Inc. (Dallas Tube) [1] for $150,000. Stump is located in Toledo, Ohio, Dallas Tube is located in Dallas, Texas and the mill was located in Los Angeles, California. While it is unclear which party made the first contact, it is undisputed that Larry Hedrick (Hedrick), president of Dallas Tube, and Ralph Girkins, a sales representative for Stump, conducted their negotiations over the telephone and that Hedrick initiated a number of those calls. During these negotiations, Hedrick travelled to Los Angeles to view the mill. It was his understanding that the majority of the items to be purchased were to be coming from Los Angeles; three items that were not located there were to be sent separately.

Stump and Dallas Tube eventually reached an agreement on the sale of the used rolling mill on November 29, 1990. Stump loaned Dallas Tube an Alpha Die Set, which was needed to operate the mill, until Dallas Tube could obtain one of its own. Stump also alleges that Dallas Tube agreed to store a mill which it had sold to another Dallas, Texas company, Silver–Tek, until Stump authorized its release to Silver–Tek.

Dallas Tube paid Stump $125,000 of the purchase price. It refused to pay the balance because it alleged that the mill was defective and that certain parts and accessories were missing or never delivered. Stump, claiming that it had sold the mill "as-is", demanded payment of the $25,000 balance and the return of the Alpha Die Set. Hedrick sent Girkins a letter on April 5, 1991 detailing his complaints; this was followed up by another letter on April 19, 1991. Because there was no response to his letters, Hedrick had his attorney send Stump a letter on May 20, 1991. No satisfactory resolution was reached and, on July 26, 1991, Dallas Tube filed an action against Stump in Texas state court, alleg-

ing breach of the sales contract, violations of the Texas Deceptive Trade Practices—Consumer Protection Act and tortious interference with Dallas Tube's business relations.

Stump was served through the Texas Secretary of State and received a copy of the lawsuit papers on August 5, 1991. On August 12, 1991, Stump filed suit against Dallas Tube in the Court of Common Pleas in Lucas County, Ohio. Stump alleges a breach of contract, wrongful conversion of the Alpha Die Set and breach of a bailment contract.[2] Dallas Tube removed that action to this Court and now moves to dismiss, alleging that this Court lacks personal jurisdiction over it because it has never operated in Ohio, all the documents it signed relating to this transaction were signed in Texas, none of its representatives have ever travelled to Ohio with regards to this transaction and it had never before done business with Stump. In the alternative, Dallas Tube seeks to either transfer this action to Texas or stay it pending the outcome of its Texas state court suit.

■ In the Sixth Circuit, a district court deciding a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R.Civ.P. 12(b)(2) may: (1) determine the motion on the basis of submitted affidavits only; (2) permit discovery in aid of the motion; or (3) conduct an evidentiary hearing on the merits of the motion. *Serras v. First Tennessee Bank Nat'l. Assoc.*, 875 F.2d 1212, 1214 (6th Cir.1989) *quoting Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2nd Cir.1981). Where the court chooses, as it does here, to decide the motion on the basis of written submissions alone, the plaintiff must make a *prima facie* showing, by affidavit or otherwise, that personal jurisdiction exists. *Id.* (citations omitted). The affidavits and pleadings must be considered in a light most

---

**1.** Stump has also named Delta Metalforming Co. as a defendant, alleging that, in 1986, Dallas Tube changed its name to Delta Metalforming Co. Dallas Tube has stated that, in fact, the reverse is true and Dallas Tube bought all the assets of Delta Metalforming Co. in 1986 and has operated exclusively as Dallas Tube since early 1987. Consequently, the Court will refer

to defendants as Dallas Tube for the remainder of this opinion.

**2.** Stump alleges that the parties entered into a bailment contract regarding the mill Stump sold to Silver–Tek and that Dallas Tube breached that contract by releasing the mill to Silver–Tek without Stump's authorization.

favorable to the plaintiff and, if both parties submit written affidavits, any contrary assertions must be resolved, for the purposes of deciding this motion only, in favor of the plaintiff. *Id.* at 1214–15 (citations omitted); *Theunissen v. Matthews,* 935 F.2d 1454, 1459 (6th Cir.1991) (citations omitted).

A district court sitting in a diversity action must look to state law to determine if personal jurisdiction exists over a non-resident defendant. *Theunissen v. Matthews, supra* at 1459 (citations omitted). If personal jurisdiction does exist under state law, the court then must determine if the exercise of such jurisdiction comports with the notions of fair play encompassed by the Fourteenth Amendment's Due Process Clause. *In—Flight Devices Corp. v. Van Dusen Air, Inc.,* 466 F.2d 220, 224 (6th Cir.1972); *Wright Int'l. Express, Inc. v. Roger Dean Chevrolet, Inc.,* 689 F.Supp. 788, 790 (S.D.Ohio 1988). Since the Sixth Circuit has held that Ohio's long-arm statute extends to the outer limits of the Due Process Clause, this Court's inquiry is limited to whether the exercise of personal jurisdiction over Dallas Tube in this case is consistent with the Due Process Clause. *See First Nat'l. Bank v. J.W. Brewer Tire Co.,* 680 F.2d 1123 (6th Cir. 1982); *Am. Greetings Corp. v. Cohn,* 839 F.2d 1164 (6th Cir.1988).

In the case *sub judice,* Stump asserts that this Court has personal jurisdiction over Dallas Tube based on a single act, that of entering into a contract with an Ohio resident. Therefore, this Court must apply a three-pronged analysis to determine if the exercise of such jurisdiction is constitutional: (1) did Dallas Tube purposefully avail itself of either acting or causing a consequence in Ohio?; (2) does the cause of action arise from Dallas Tube's activities in Ohio?; and (3) do the acts of Dallas Tube or the consequences caused by it have a substantial enough connection with Ohio to make it reasonable to exercise jurisdiction over it? *Southern Machine Co. v. Mohasco Indus., Inc.,* 401 F.2d 374, 381 (6th Cir.1968); *Pickens v. Hess,* 573 F.2d 380, 385 (6th Cir.1978).

The first prong—that the defendant purposefully availed itself of transacting business in the forum state—is considered to be the *sine qua non* for personal jurisdiction. *Southern Machine, supra* at 381–82; *LAK, Inc. v. Deer Creek Enter.,* 885 F.2d 1293, 1300 (6th Cir.1989), *cert. denied* 494 U.S. 1056, 110 S.Ct. 1525, 108 L.Ed.2d 764 (1990). It is intended to ensure that a defendant has substantial connections with the forum state and "will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (citations omitted). A defendant, even though never physically present, will create a substantial connection with the forum state by deliberately engaging in activities there or by creating continuing obligations between himself and residents of the forum state. *Id.* at 475–76, 105 S.Ct. at 2183–84 (citations omitted). A defendant who has created such a connection with the forum state has purposefully availed himself of transacting business there. *Id.*

In a contract dispute, the court must look at the prior negotiations, the contemplated future consequences, the contract's terms and the actual course of dealing between the parties to determine if the defendant has purposefully availed himself of transacting business there. *Id.* at 479, 105 S.Ct. at 2185–86. A defendant who has created a continuing relationship with a resident of the forum state or whose contractual obligations have created a realistic and foreseeable impact upon the commerce of the forum state has established a substantial connection with that state and has purposefully availed himself of transacting business there. *See Burger King, supra* (defendant created a continuing relationship by entering into a 20 year franchise agreement with resident); *Southern Machine, supra* (defendant licensed plaintiff to manufacture, sell and lease machines in the forum state from which defendant obtained royalties); *In—Flight Devices, supra* (defendant ordered a substantial quantity of goods to be manufactured in the forum

state, had a subsidiary there and had an officer conduct negotiations there); *Serras, supra* (defendant not only made phone calls into the forum state but also allegedly travelled there to solicit plaintiff's business and made fraudulent misrepresentations while there); *Third Nat'l. Bank v. Wedge Group Inc.*, 882 F.2d 1087 (6th Cir.1989), *cert. denied* 493 U.S. 1058, 110 S.Ct. 870, 107 L.Ed.2d 953 (1990) (defendant's wholly owned subsidiary operated in the forum state, its officers served as the subsidiary's directors and met regularly in the forum state, it shared tax liabilities with the subsidiary and participated in negotiations and entered into an agreement with plaintiff in the forum state); *Evans Tempcon, Inc. v. Index Indus., Inc.*, 778 F.Supp. 371, 376 (W.D.Mich.1990) ("[d]efendant's activities when taken as a whole, manifest the creation of 'continuing obligations' between defendant and plaintiff").

However, the mere fact that a defendant has entered into a contract with a resident of the forum state does not automatically establish that a defendant has purposefully availed itself of acting in the forum state. *Burger King, supra* 471 U.S. at 478, 105 S.Ct. at 2185. Nor does the fact that the contract is coupled with telephone calls made by the defendant from an out-of-state location to the plaintiff in the forum state establish a substantial connection with the forum state. *See Serras, supra* at 1217, *citing Speckine v. Stanwick Int'l., Inc.*, 503 F.Supp. 1055, 1059 (W.D.Mich.1980) ("the defendant's making a telephone call from an out-of-state location to the plaintiffs in Michigan, seeking to solicit the plaintiff to engage in an out-of-state transaction ... [is] not sufficient to support long-arm jurisdiction"); *LAK, supra* at 1301 (telephone calls and letters are "precisely the sort of 'random,' 'fortuitous' and 'attenuated' contacts that the *Burger King* Court rejected as a basis for haling non-resident defendants into foreign jurisdictions"). Finally, where a non-resident defendant has entered into a contract which can be characterized as a one-shot deal or which does not anticipate creating an impact on the commerce of the forum state, it would not be fair to force that defendant to litigate there. *See LAK, supra* (defendant did not purposefully avail itself of acting in the forum state where its contacts were not intended to be ongoing, far-reaching, continuous or substantial); *Capital Dredge & Dock Corp. v. Midwest Dredging Co.*, 573 F.2d 377 (6th Cir.1978) (personal jurisdiction did not exist where plaintiff was to produce no goods in the forum state and the only contractual performance to impact it was the obligation to pay money there); *Pickens v. Hess, supra* (defendant did not purposefully avail himself of transacting business in the forum state where no continuing business relationship was established and he had no reason to believe the contract would have substantial consequences in it).

In the case *sub judice*, assuming that Dallas Tube initiated contact with Stump, the Court is not persuaded that Dallas Tube intended to create a continuing relationship with Stump nor was it reasonable or foreseeable that its contract to buy a used tube mill located in California would have substantial connections with the state of Ohio. The contract was a one-shot deal. Dallas Tube never had any other dealings with Stump. It operates almost exclusively in Texas and has no contacts with Ohio except for the transaction at issue here. No representative from Dallas Tube ever came to Ohio to negotiate the purchase of the tube mill. All negotiations took place via the telephone or a fax machine. These random, fortuitous and attenuated contacts are insufficient to hale Dallas Tube into court here. Because Dallas Tube has not purposefully availed itself of the privilege of transacting business in the state of Ohio, this Court cannot exercise personal jurisdiction over it. As such, Dallas Tube's motion to dismiss is found well taken and the same is granted.

Accordingly, it is

ORDERED that defendants' motion to dismiss is granted. Cause dismissed.