**HIGHWAY AUTO SALES, INC., Plaintiff,**

v.

**AUTO–KONIG OF SCOTTSDALE, INC., Defendant.**

**No. 3:96CV7276.**

United States District Court, N.D. Ohio, Western Division.

Sept. 20, 1996.

Theodore M. Rowen and James Paul Silk, Jr., Spengler & Nathanson, Toledo, OH, for Plaintiff.

Robert M. Anspach and Leonore Nathalie Hiemstra, Law Offices of Robert M. Anspach & Associates, Toledo, OH, for Defendant.

## MEMORANDUM AND ORDER

.CARR, District Judge.

This case involves both contract and tort claims arising out of the sale of an automobile. Because complete diversity exists between the parties and the amount in controversy exceeds $50,000 exclusive of interest and costs, subject matter jurisdiction exists pursuant to 28 U.S.C. § 1332. Pending is defendant's Rule 12(b)(2) motion to dismiss or transfer for lack of personal jurisdiction. (Doc. 5). For the following reasons, defendant's motion shall be granted and the case transferred to the District Court of Arizona.

In January 1996, Mr. Joseph Liber (Liber), President of plaintiff Highway Auto Sales, Inc., saw an advertisement in the *Du-Pont Registry*—a national publication specializing in new or pre-owned vehicles—offering a "1991 F40 Coupe Ferrari" for sale for $275,000. An automobile dealer specializing in the sale of expensive and rare automobiles, Liber telephoned defendant to inquire about the Ferrari, its availability and condition. Mr. David Murphy (Murphy), General Manager of defendant Auto–Konig of Scottsdale, Inc. (Auto–Konig), received plaintiff's phone call and answered some preliminary questions about the Ferrari. Not having the answers to all of Liber's questions, Murphy said he would "get back" to Liber after an inspection of the vehicle. On "getting back" to Liber, Murphy allegedly assured Liber that the Ferrari was in "excellent condition" and "authentic." (Plaintiff's Complaint at ¶ 7). The parties agreed upon a purchase price of $226,000 including delivery of the car to Toledo, Ohio, the location of plaintiff. Plaintiff paid the purchase price in full and defendant delivered the vehicle on February 5, 1996.

On inspecting the vehicle in Toledo, Liber discovered several problems with the Ferarri, including ripped and stained seat covers, nicks in the windshield and right rear "dog leg," hairline cracks in the spoiler, and chipped paint in at least two locations on the car. (Plaintiff's Complaint at ¶ 12). Furthermore, by comparing his newly-purchased Ferrari to other "authentic" Ferraris, Liber discerned that the Auto–Konig Ferrari was

not "authentic," as evidenced by the style of the seat belts and the color of the embossed name on the rear spoiler of the vehicle. (Plaintiff's Complaint at ¶¶ 10–11). On April 15, 1996, plaintiff revoked acceptance of the Ferrari and demanded return of the purchase price plus interest. Defendant refused to rescind the sale. Plaintiff brings this suit claiming breach of contract, breach of express warranty, breach of implied warranty, negligent misrepresentation, and fraud.

Without responding to the merits of plaintiff's claim, defendant moves for dismissal or transfer based on lack of personal jurisdiction. Defendant asserts that this court cannot exercise personal jurisdiction under either Ohio's long-arm statute, O.R.C. § 2307.382, or the limits imposed by the due process clause of the Constitution. For the following reasons, I agree with defendant that the contacts presented in this case do not meet the "minimum contacts" requirement for personal jurisdiction as articulated by the Supreme Court and applied in our Circuit. Therefore, this case should be transferred to the District of Arizona.

■ The Sixth Circuit recently affirmed that when "a district court rules on a jurisdictional motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) without conducting an evidentiary hearing, the court must consider the pleadings and affidavits in a light most favorable to the plaintiff." *CompuServe Inc. v. Patterson*, 89 F.3d 1257, 1262 (1996) (*citing Theunissen v. Matthews*, 935 F.2d 1454, 1458–59 (6th Cir.1991)). Put simply, "[d]ismissal in this procedural posture is proper only if all the specific facts which the plaintiff alleges collectively fail to state a prima facie case for jurisdiction." *Id.* Having not held an evidentiary hearing, this analysis of personal jurisdiction is undertaken without regard to defendant's affidavits,[1] because I am looking only to see if plaintiff makes out a *prima facie* case of *in personam* jurisdiction.

■ To gain personal jurisdiction over a defendant, plaintiff must show: (1) the defendant is amenable to suit under the forum state's long-arm statute; and (2) due process requirements of the Constitution are met. *CompuServe*, 89 F.3d at 1262; *Reynolds v. International Amateur Athletic Fed'n*, 23 F.3d 1110, 1115 (6th Cir.1994); *In–Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 224 (6th Cir.1972). Therefore, plaintiff must demonstrate that this court possesses the statutory power as well as the constitutional right to hear this case.

### Ohio's Long–Arm Statute

The Ohio long-arm statute, O.R.C. § 2307.382(A), broadly provides jurisdiction over any person or corporation:

(1) transacting any business in this state;
(2) contracting to supply services or goods in this state; ... (6) causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state;
....

The Sixth Circuit has read the "transacting business" clause of Ohio's long-arm statute as "extend[ing] to the federal constitutional limits of due process," and intending to reach "as far as the Due Process Clause will allow." *CompuServe*, 89 F.3d at 1262, 1266. The Ohio Supreme Court, however, has stated that the "claim that the General Assembly intended the long-arm statute 'to give Ohio courts jurisdiction to the limits of the Due Process Clause' is erroneous, since that interpretation would render the first part of the court's two-part analysis nugatory." *Goldstein v. Christiansen*, 70 Ohio St.3d 232, 238 n. 1, 638 N.E.2d 541 (1994) (*citing* McCormac, Ohio Civil Rules Practice 49 (2d ed.1992)) ("Ohio has not extended long-arm jurisdiction to the limits of due process"). Thus, whether defendant's actions bring it under the scope of Ohio's long-arm requires more than mere passing reference.

---

1. In accordance with the Sixth Circuit's warning against considering defendant's affidavits, see *CompuServe*, 89 F.3d at 1263 n. 7 ("[t]he district court clearly erred in considering Patterson's [defendant] affidavit"), I will not, for purposes of this motion, consider the affidavits of Ruediger Czakert, President of defendant, Ari Sperling, Vice President of defendant, or David B. Murphy, General Manager of defendant.

In this case, defendant's actions as described by plaintiff come within each of the three long-arm categories listed above.[2] First, "transacting business" means "to carry on business" and "to have dealings," and is "broader than the word 'contract.'" *Goldstein*, 70 Ohio St.3d at 236, 638 N.E.2d 541 (*quoting Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St.3d 73, 75, 559 N.E.2d 477 (1990)). As described by plaintiff, Liber called defendant and spoke with a general manager who, in turn, relayed information to Liber, made various representations about the automobile, negotiated a purchase price, executed a contract, and accepted payment for the vehicle. These interactions can properly be considered "dealings" which bring defendant's actions within Ohio's long-arm statute.

Additionally, if the phrase "transacting business" is "broader than the word contract," "transacting business" must logically subsume the narrower act of contracting. Thus, because defendant contracted with plaintiff, Ohio's long-arm statute would apply on that basis as well. Even if the "transacting business" clause does not cover the instant action, defendant in fact contracted to—and actually did—"supply goods" (the Ferrari), to plaintiff in the state of Ohio. This brings this business interaction within the second category of Ohio's long-arm statute.

In any event, the defendant's alleged tortious conduct—acts of negligent misrepresentation and fraud—also fits squarely within Ohio's long-arm statute. As described by plaintiff, the nonresident defendant's acts of negligent misrepresentation and intentional fraud caused injury in Ohio by "omission," thus bringing the instant action under the sixth category of Ohio's long-arm statute.

In conclusion, under the "transacting business," "supplying goods," or "committing a tort by omission" theories, the first, second, and sixth categories of Ohio's long-arm statute provide this court with the statutory power to entertain the case at bar, thus clearing the first jurisdictional requirement.

### Constitutional Due Process: Minimum Contacts

As required by the due process clause of the Constitution, a defendant must have "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).[3] In articulating grounds for personal jurisdiction resulting from a single act, the Sixth Circuit looks to three criteria:

> First, the defendant must purposefully avail himself of the privilege of *acting in* the forum state or *causing a consequence in* the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

2. Defendant, in its memorandum in support of the motion to dismiss, contends that "none of the provisions of Ohio's long-arm statute would apply because Auto–Konig does not have sufficient 'minimum contacts' to be 'reached' by Ohio's long-arm statute." (Plaintiff's Memorandum at 7). This statement seems to conflate the two personal jurisdiction hurdles. Instead of merging the "statutory" and "constitutional" analyses together, as defendant does in its brief, I will separately address (1) whether the words of Ohio's long-arm statute convey upon this court the statutory power to assert personal jurisdiction in this matter and (2) whether the facts as stated by plaintiff grant this court the constitutional right to assert personal jurisdiction over this defendant. Thus, the two-part inquiry addresses the statutory power and the constitutional right to assert personal jurisdiction as two separate inquiries, not one conflated analysis as defendant seems to argue.

3. As explained in *International Shoe*, the due process analysis of personal jurisdiction includes two inquiries: (1) does the defendant have "minimum contacts" with the forum state such that (2) the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." 326 U.S. at 316, 66 S.Ct. at 158. This case turns on the minimum contacts analysis and, therefore, it is unnecessary to discuss whether personal jurisdiction in this case offends traditional notions of fairness.

*CompuServe,* 89 F.3d at 1263 (emphasis added); *Reynolds,* 23 F.3d at 1116; *LAK, Inc. v. Deer Creek Enterprises,* 885 F.2d 1293, 1299 (6th Cir.1989); *In–Flight Devices,* 466 F.2d at 226; *Southern Mach. Co. v. Mohasco Indus.,* 401 F.2d 374, 381 (6th Cir.1968).

The first—and dispositive—inquiry in this case is whether the nonresident defendant corporation purposefully availed itself of the privilege of "acting in" Ohio or "causing a consequence" in Ohio. This "purposeful availment" prong is a "baseline requirement," *In–Flight Devices,* 466 F.2d at 228, or the *"sine qua non"* for personal jurisdiction, *Mohasco Indus.,* 401 F.2d at 381–82. According to the Sixth Circuit, a defendant satisfies the purposeful availment requirement when a defendant's contacts create a "substantial connection" with the forum state such that defendant "should reasonably anticipate being haled into court there." *CompuServe,* 89 F.3d at 1263 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474–75, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985), and *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)); *Reynolds,* 23 F.3d at 1116. The Supreme Court offers the following explanation:

> where the defendant "deliberately" has engaged in *significant* activities within a state *or* has created "continuing obligations" between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

*Burger King Corp.,* 471 U.S. at 475–76, 105 S.Ct. at 2184 (emphasis added) (citations

omitted); *Stump v. Delta Metalforming Co.,* 793 F.Supp. 157, 159 (N.D.Ohio 1992). Thus, a finding of "purposeful availment" turns on whether Auto–Konig's connections with Ohio are either (1) "substantial" or "significant" enough such that Auto-Konig should have "reasonably" anticipated being haled into an Ohio court *or* (2) whether defendant created "continuing obligations" between himself and the residents of the forum. Because Auto–Konig's contacts with Ohio were not "substantial or significant" and because Auto–Konig did not create "continuing obligations" between itself and plaintiff, plaintiff fails to meet the "purposeful availment" prong of the minimum contacts test.

First, the connections between defendant and Ohio were not so substantial that Auto-Konig reasonably would have anticipated being haled into an Ohio court. In exploring the outer limits of what constitutes "substantial" or "significant" minimum contacts, the Supreme Court has determined that merely entering into a contract with a resident of the forum state, without more, does not "automatically establish sufficient minimum contacts," because a contract is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transactions." *Burger King Corp.,* 471 U.S. at 478, 105 S.Ct. at 2185 (quoting *Hoopeston Canning Co. v. Cullen,* 318 U.S. 313, 316, 63 S.Ct. 602, 604, 87 L.Ed. 777 (1943)).[4] Instead, to determine purposeful minimum contacts within the forum state, courts must evaluate "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id.,* 471 U.S. at 479, 105 S.Ct. at 2185; *Stump,* 793 F.Supp. at 159.

---

4. Plaintiff cites two Ohio cases—both from the same judge—for support of the notion that "entering into a contract with an Ohio resident satisfies the first requirement of *Southern Machine.*" (Plaintiff's Memorandum Opposing Defendant's Motion to Dismiss at 10). In identical language, those two cases state "[t]he intentional act of entering into a contractual relationship with a resident of Ohio is sufficient to meet the purposeful action requirement." *Wright Int'l Express Inc. v. Roger Dean Chevrolet,* 689 F.Supp. 788, 790 (S.D.Ohio 1988); *Reliance Elec. Co. v.*

*Luecke,* 695 F.Supp. 917, 920 (S.D.Ohio 1988). Rigid application of this rule would contradict the Supreme Court's command that courts evaluate "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties actual course of dealing." *Burger King Corp.,* 471 U.S. at 479, 105 S.Ct. at 2185. In reaching my conclusion regarding minimum contacts, therefore, I will analyze the transaction at issue in more depth than plaintiff urges.

In this case, defendant's contacts with Ohio before and after the intermediate step of contracting—separately or taken together—fail to qualify as "significant" or "substantial" contacts. Before contracting for the sale of the Ferrari, defendant's contact with Ohio amounted to use of national advertising, the telephone, and other "secondary or ancillary" lines of communication, which "cannot alone provide the minimum contacts required by due process." *Reynolds*, 23 F.3d at 1119 (*quoting Scullin Steel Co. v. National Railway Utilization Corp.*, 676 F.2d 309, 314 (8th Cir.1982)). Even though defendant advertised in a national publication and, through its General Manager, initiated a phone call to Liber for purposes of explaining the condition and quality of the automobile, such communications "are insufficient to establish purposeful availment." *Id.*

After the parties signed the contract, defendant accepted payment and delivered the vehicle to plaintiff. Accepting payment electronically, like discussions via phone and fax lines, involves the "ancillary" use of "interstate facilities." *Id.* Furthermore, "injection of [a product] into the stream of commerce, without more, would be at best a dubious ground for jurisdiction." *CompuServe*, 89 F.3d at 1265 (*citing Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 112, 107 S.Ct. 1026, 1032, 94 L.Ed.2d 92 (1987)). The transaction between the parties was their first interaction. Plaintiff does not claim that future dealings were to take place between it and defendant, the "course of dealing" between plaintiff and defendant occurred in summary fashion, the contract contained standard and ordinary terms, as evidenced by its boilerplate language, and all dealings took place via the telephone, fax, and other "ancillary" networks. Taken as a whole, this transaction did not involve "substantial or significant" connections with the state of Ohio such that defendant would "reasonably" expect to be haled into an Ohio court.[5]

Second, in addition to not connecting with Ohio in "substantial or significant" ways, defendant's contacts cannot be characterized as creating "continuing obligations" to or an ongoing relationship with plaintiff. A defendant establishes an ongoing relationship with a resident of a forum state when contractual obligations create "a realistic and foreseeable impact upon the commerce of the forum state." *Stump*, 793 F.Supp. at 159. *See also Burger King Corp.*, 471 U.S. at 479, 105 S.Ct. at 2185; *Mohasco Indus.*, 401 F.2d at 382–83; *In–Flight Devices*, 466 F.2d at 226. Cases involving "continuing obligations" revolve around contacts of a greater intensity and duration than the "one-shot deal" in the case at bar. *See, e.g., Burger King Corp., supra,* (entering into a 20 year franchise agreement), *Mohasco Indus., supra* (negotiating a license to manufacture, sell, and lease a product in the forum state), *In–Flight Devices, supra* (ordering a substantial quantity of goods to be produced in the forum state); *Third Nat'l Bank v. WEDGE Group Inc.*, 882 F.2d 1087 (6th Cir.1989) (operating in the forum stating and having directors meet regularly in the forum state); *Serras v. First Tennessee Bank Nat'l Ass'n*, 875 F.2d 1212 (6th Cir.1989) (traveling to the forum state to solicit business); *Reliance Elec. Co. v. Luecke*, 695 F.Supp. 917 (S.D.Ohio 1988) (acting as a guaranty to induce plaintiff to extend credit to a third party); *Wright Int'l Express v. Roger Dean Chevrolet*, 689 F.Supp. 788 (S.D.Ohio 1988) (negotiating over a 45–day period and contracting for the lease of a lear jet which required maintenance and record keeping in the forum state); *Garrett v. Ruth Originals Corp.*, 456 F.Supp. 376 (S.D.Ohio 1978) (conducting a nine-year relationship with plain-

---

**5.** Additionally, the boilerplate contract signed by the parties contains a choice of law provision, designating that the contract "shall be governed by the laws of the State of Arizona." (Defendant's Exhibit B at 7). Although choice of law provisions are "not sufficient guides for measuring the power of a state to issue process beyond its borders," *Mohasco Indus.*, 401 F.2d at 382, the Supreme Court has said "nothing in our cases suggests that choice-of-law provisions should be ignored in considering whether a defendant has 'purposefully invoked the benefits and protections of a State's laws' for jurisdictional purposes." *Burger King Corp.*, 471 U.S. at 482, 105 S.Ct. at 2187. That the parties chose Arizona law as governing the transaction "does not help" plaintiff in demonstrating that defendant availed itself of the benefits and protections of Ohio law. *LAK, Inc v. Deer Creek Enterprises*, 885 F.2d 1293, 1295 (6th Cir.1989).

tiff and offering plaintiff an employment contract which caused plaintiff to leave his former employer).

Advertising in a nationally circulated publication, negotiating the sale of a single vehicle over telephone and fax lines, and arranging the delivery of the vehicle to the forum state involve contacts of a short and fleeting character—contacts which are insufficient to create a "realistic and foreseeable impact" on the commerce of Ohio. There has been no showing that defendant's contacts with Ohio were to have "ongoing," "far-reaching," "continuous," or "substantial" consequences on commerce in Ohio. *See LAK, Inc. v. Deer Creek Enterprises,* 885 F.2d 1293, 1303 (6th Cir.1989).

Aside from applying principles of the "purposeful availment" analysis, namely "significant" or "substantial" connections and the nonexistence of "continuing obligations," it is helpful to analogize to specific cases. Recently, the Sixth Circuit in *CompuServe, supra,* explained that its defendant, in meeting the purposeful availment requirement, did much more than advertise, contract to sell, and send a product into the stream of commerce. Rather, the *CompuServe* defendant repeatedly sent a product to plaintiff CompuServe for resale, advertised the product with CompuServe, repeatedly demanded $100,000 from CompuServe to redress an alleged copyright infringement, described the lawsuit against CompuServe on one of CompuServe's electronic forums, gave a "myriad" of others access to his product via CompuServe, and contracted with CompuServe to be the *exclusive distributor* of his software product. *See CompuServe,* 89 F.3d at 1264–67. The *CompuServe* defendant, by "intend[ing] to continue marketing his software on CompuServe," *CompuServe* 89 F.3d at 1265, contemplated an ongoing relationship with plaintiff. When analyzing the contacts between its parties, the *CompuServe* court stated "it is [defendant's] relationship with CompuServe as a software provider *and marketer* that is crucial to this case." *CompuServe,* 89 F.3d at 1264.

The case at bar is distinguishable from the facts of *CompuServe* in a way that cuts

against a finding of purposeful availment and, thus, personal jurisdiction. Indisputably, defendant communicated with plaintiff, entered into a contract with plaintiff, and injected a product—the Ferrari—into the stream of commerce. Unlike the *CompuServe* defendant, Auto–Konig did not contemplate an ongoing relationship with plaintiff, contract with plaintiff to be its "exclusive distributor" of automobiles, utilize plaintiff as a "marketer" of its automobiles, advertise its vehicles with plaintiff, give a "myriad" of others access to its vehicles through channels provided by plaintiff, or repeatedly contact plaintiff, make legal demands upon plaintiff, or inform the public that it was involved in a lawsuit with plaintiff. In short, Auto–Konig's contacts with Ohio are of a significantly lesser quantity and, more importantly, of a significantly lesser "quality," *see LAK, Inc. v. Deer Creek Enterprises,* 885 F.2d 1293, 1301 (6th Cir.1989), than the Ohio contacts in the *CompuServe* case. Simply put, the sale of the Ferrari to plaintiff was a "one-shot affair," *Mohasco Indus.,* 401 F.2d at 385, which does not amount to purposeful availment.

Instead, the case at bar is far more similar to a case from this District, *Stump, supra,* where a nonresident defendant corporation contracted to purchase a used rolling mill from an Ohio corporation. In *Stump,* defendant initiated "a number" of telephone calls during which the parties negotiated the sale. The sale item, a rolling mill, was located outside the forum jurisdiction, and defendant agreed to pay $150,000 for the mill. Finding the mill to be defective, defendant refused to pay the balance and filed suit alleging claims in contract and tort in Texas state court. Plaintiff then counterclaimed against defendant in Ohio state court, defendant removed the action to federal court, and filed for dismissal based on lack of personal jurisdiction. After a careful analysis of the contacts, the court dismissed the suit, stating that "these random, fortuitous and attenuated contacts are insufficient to hale Dallas Tube into court here." 793 F.Supp. at 160.

The essential facts of the case at bar are virtually indistinguishable from *Stump.*[6]

---

**6.** One—and perhaps the only—significant differ-

ence between the case at bar and *Stump* is that

Here, as in *Stump:* negotiations took place via telephone and fax; the contract was a "one-shot" deal; plaintiff's allegations indicate no intention to establish a continuing relationship; it was not fairly foreseeable that a single contract to sell a vehicle would create substantial connections with Ohio; there is no allegation that defendant had any other dealings with plaintiff or that defendant did any other business in Ohio; and no representative from Auto–Konig ever traveled to Ohio to negotiate the vehicle sale. Like the defendant in *Stump*, Auto–Konig "has not purposefully availed itself of the privilege of transacting business in the state of Ohio," *id.* at 160, and therefore this Court cannot exercise personal jurisdiction over it.

Having taken all the specific facts alleged by plaintiff as true, plaintiff, because it has not shown defendant's purposeful availment of the privilege of doing business in Ohio, fails to state a *prima facie* case for personal jurisdiction. For the foregoing reasons, it is

**ORDERED THAT** this case be, and it hereby is, transferred to the District of Arizona.

**So ordered.**

our defendant is a seller and the defendant in *Stump* was a buyer. As noted by the Sixth Circuit, "[j]urisdiction has more often been assumed over non-resident sellers than over non-resident buyers" because "the seller often initiates the deal, tends to set many, if not all of the terms on which it will sell" while the buyer, on the other hand, "is frequently a relatively passive party, simply placing an order, accepting the seller's price and terms as stated in his product advertising and agreeing only to pay a sum upon receipt of the goods or services." *In–Flight Services*, 466 F.2d at 220. Our case, however, is dissimilar because the buyer initiated the deal, was a passive party in the transaction, negotiated the price down from $275,000 to $226,000, and paid the entire sales price in advance, prior to receiving the vehicle. Thus, the bias toward finding personal jurisdiction over a nonresident seller, as articulated in *In–Flight Devices*, would not apply in this case.