SPECIAL AVIATION SYS., INC., et al., Plaintiffs,

v.

AIRCRAFT STRUCTURES INT'L CORP., Defendant.

No. 3:03 CV 7248.

United States District Court,
N.D. Ohio,
Western Division.

June 17, 2004.

John F. Potts, Toledo, OH, for Special Aviation Systems, Inc., Ruhe Sales, Inc., Plaintiffs.

Ray A. Farris, Fuller & Henry, Toledo, OH, for Aircraft Structures International Corporation, Defendant.

## ORDER

CARR, District Judge.

This is a breach of contract case in which plaintiffs Special Aviation Systems, Inc. ("Special Aviation") and Ruhe Sales, Inc. ("Ruhe Sales") contend that they are the intended third-party beneficiaries of an oral contract between defendant Aircraft Structures International Corporation ("ASIC") and Ohio Turbine Center, Inc. ("Ohio Turbine"). Plaintiffs allege that they are entitled to relief from defendant for an alleged breach of that contract. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

A case brought by defendant against Ohio Turbine regarding the same oral contract and its alleged breach awaits decision in the United States District Court for the Western District of Oklahoma. Thus, defendant has filed Fed.R.Civ.P. 12(b)(2) and 12(b)(3) motions to dismiss or transfer for lack of personal jurisdiction and improper venue. For the following reasons, defendant's motions shall be granted.

## BACKGROUND

Plaintiffs are Ohio corporations with their principal places of business in Leipsic, Ohio. Robert Ruhe is the chairman of the Board of Directors of Special Aviation Systems and incorporator, statutory agent, and owner of Ruhe Sales. Mr. Ruhe is also the owner and operator of Ohio Turbine, an Ohio corporation also located in Leipsic, Ohio. Robert Ruhe controls all these corporations, which coordinate their business activities for one another's mutual benefit.

Defendant is an Oklahoma corporation with its office and principal place of business in Enid, Oklahoma.

Defendant placed an advertisement soliciting business in *Trade-a-Plane*, a publication of national distribution. In response, representatives of Ohio Turbine telephoned defendant to make further inquiries about defendant's services. Defendant mailed a promotional brochure to Ohio Turbine in Leipsic, Ohio. Thereafter, defendant and Ohio Turbine entered into an oral contract pursuant to which defendant was to refurbish and repair a salvaged Cessna Caravan airframe owned by Mr. Ruhe for the benefit of Special Aviation. Instead of cash payment for the service, Mr. Ruhe offered a barter in which Ohio Turbine would overhaul three aircraft engines owned by defendant in exchange for defendant's services.

Representatives from Ohio Turbine traveled to Oklahoma to negotiate the above-described oral contract. No representative of defendant traveled to Ohio during the negotiations or performance of the contract. All other communications between the parties were by telephone.

As a result of disagreements regarding the performance of the oral contract, defendant brought a breach of contract action against Ohio Turbine and Mr. Ruhe in an Oklahoma state court. Mr. Ruhe removed the action to federal court and filed a counterclaim against defendant alleging it breached the contract. That counterclaim did not, however, seek damages on behalf of Mr. Ruhe or Special Aviation as third party beneficiaries of the allegedly breached contract. Instead, Special Aviation and Ruhe Sales brought this entirely separate lawsuit.

Plaintiffs contend that the oral contract between defendant and Ohio Turbine was made for the benefit of plaintiff Ruhe Sales (owner of the airframe) and plaintiff Special Aviation (the intended end user of the airframe). Defendant claims in its motion to dismiss that this court cannot exercise personal jurisdiction over it and requests a transfer to the Western District of Oklahoma.

## STANDARD OF REVIEW

"The procedural scheme which guides the district court in disposing of Rule 12(b)(2) motions is well-settled." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir.1991). Plaintiff bears the burden of establishing personal jurisdiction over defendants. *Id.; CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir.1996). Moreover, plaintiff may not stand on its pleadings to meet its burden; plaintiff must "set forth specific facts showing that the court has jurisdiction." *Theunissen*, 935 F.2d at 1458. Because this court has elected to decide this motion based on affidavits alone, however, plaintiff's pleadings and affidavits will be considered in a light most favorable to plaintiff. *Id.* A court in this situation "does not weigh the controverting assertions of the party seeking dismissal." *Id.* at 1459.

## DISCUSSION

In response to defendant's motion to dismiss, plaintiff must establish a prima facie case showing that defendant is subject to personal jurisdiction in this court. "To determine whether personal jurisdiction exists over a defendant, federal courts apply the law of the forum state, subject to the limits of the Due Process Clause of the Fourteenth Amendment." *CompuServe*, 89 F.3d at 1262. Ohio's long-arm statute does not extend personal jurisdiction to the limits of due process. *Goldstein v. Christiansen*, 70 Ohio St.3d 232, 238, 638 N.E.2d 541 (1994); *see also Glasstech, Inc. v. TGL Tempering Systems, Inc.*, 50 F.Supp.2d 722, 725 (N.D.Ohio 1999). Plaintiff, therefore, must show: 1) the defendant is amenable to suit under Ohio's long arm statute, and 2) allowing the defendant to be sued in Ohio does not contravene due process. *CompuServe*, 89 F.3d at 1262; *Highway Auto Sales, Inc. v. Auto–Konig of Scottsdale, Inc.*, 943 F.Supp. 825, 828 (N.D.Ohio 1996).

### A. Ohio's Long–Arm Statute

The Ohio long-arm statute, O.R.C. § 2307.382(A), states that personal jurisdiction arises from:

(1) Transacting any business in this state;

(2) Contracting to supply services or goods in this state;

(3) Causing tortious injury ... in this state;

(4) Causing tortious injury in this state by an act ... outside this state if he regularly does or solicits business, or

engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state . . . ;

(5) Causing injury in this state to any person by breach of warranty . . . ;

(6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of inquiring persons . . . ;

(7) Causing tortious injury to any person by criminal act . . . ;

(8) Having an interest in, using, or possessing real property in this state;

(9) Contracting to insure any person, property, or risk located within this state . . . .

In this case, it is only necessary to discuss subsections (1) and (2) of the long-arm statute.

## 1. "Transacting Business": Subsection (1) of the Ohio Long–Arm Statute

■ The Ohio Supreme Court interprets subsection (1), the "transacting business" clause of the statute, as meaning "to carry on business" and "to have dealings," and as being broader than the word "contract." *Goldstein*, 70 Ohio St.3d at 236, 638 N.E.2d 541. Furthermore, this court has explained that "the phrase 'transacting business' . . . must logically subsume the narrower act of contracting." *Highway Auto Sales, Inc.*, 943 F.Supp. at 829. In this case, defendant, an Oklahoma corporation, entered into an oral contract with Ohio Turbine, an Ohio corporation; pursuant to the terms of the contract, Special Aviation, also an Ohio corporation, was the intended third-party beneficiary. Plaintiff alleges that as a result of this contract, defendant transacted business in the state of Ohio and therefore comes within subsection (1) of the long-arm statute.

Defendant argues that the communications that led up to the creation of the oral contract do not amount to "transacting business," "carrying on business" or "having dealings" in Ohio for the purposes of subsection (1). The facts, however, reveal that defendant entered into an oral contract with Ohio Turbine pursuant to which plaintiff Special Aviation was the third-party beneficiary. Specifically, defendant agreed to repair an airframe owned by plaintiffs and, instead of demanding cash payment for that service, defendant agreed that Ohio Turbine, also owned by Mr. Ruhe, would repair three of defendant's aircraft engines. The fact that the parties contracted for the exchange of services rather than the exchange of money does not defeat the existence of a contract between the parties. Because the existence of a "contract" between parties falls under the umbrella of "transacting business," *id.* at 829, it logically follows that defendant's contract with Ohio Turbine, an Ohio corporation, establishes personal jurisdiction over defendant in Ohio under subsection (1) of the Ohio long-arm statute.

Defendant further contends that the contract does not amount to "transacting business" because it was a one-shot deal between individuals. *Nationwide Mutual Ins. Co. v. Baker*, 105 Ohio App.3d 336, 340, 663 N.E.2d 1325 (1995) (citing *Kleinfeld v. Link*, 9 Ohio App.3d 29, 457 N.E.2d 1187 (1983)). This argument is not persuasive, however, because the contract or "deal" in the instant case was not between private individuals, but, rather, between two corporations. *See id.* ("the courts of [Ohio] have apparently applied a slightly different standard in relation to individuals as compared to corporations"). In the instant case, Ohio Turbine and ASIC, both registered corporations, contracted for an exchange of services. The fact that individuals negotiated the contract on behalf of the corporations is irrelevant.

Furthermore, defendant contends that advertising in a national trade publication

alone does not establish carrying on business in Ohio, nor does it provide a basis for personal jurisdiction over the defendant. *Krutowsky v. Simonson,* 109 Ohio App.3d 367, 371, 672 N.E.2d 219 (1996) ("We cannot say a person subjects himself to Ohio's jurisdiction simply by advertising in a magazine with national circulation."). This contention, standing alone, is correct, but the defendant took action beyond simply advertising in a national publication. Here, representatives of Ohio Turbine contacted defendant and, in response to that inquiry, defendant sent a brochure to Ohio Turbine, specifically soliciting its business. There is a dispute between the parties as to whether Ohio Turbine's initial contact was a result of the defendant's advertisement; regardless, it is undisputed that defendant's provision of information to Ohio Turbine ultimately led the parties to agree to an oral contract.

### 2. Supplying Goods or Services: Subsection (2) of the Ohio Long–Arm Statute

■ Subsection (2) expressly states that personal jurisdiction will arise from "[c]ontracting to supply services or goods in this state." O.R.C. § 2307.382(A); *Highway Auto Sales Inc.,* 943 F.Supp. at 829 (the seller of a Ferrari was subject to personal jurisdiction in Ohio because he contracted to sell or "supply goods" to an Ohio buyer). Because the court has already held that defendant transacted business in Ohio by entering into a contract with an Ohio corporation, defendant is also properly subject to personal jurisdiction under subsection (2).

In this case, plaintiff shipped the airframe to defendant for repair in Oklahoma. In consideration, defendant shipped two aircraft engines to Ohio Turbine for repair. Under the terms of the contract with Ohio turbine, defendant supplied goods (the two engines) to Ohio, effectively meeting the requirements set forth under subsection (2).

### B. Constitutional Due Process

Having determined that defendant's conduct falls within the purview of Ohio's long-arm statute, I now must determine if defendant has sufficient minimum contacts with Ohio to satisfy the requirements of the due process clause of the Fourteenth Amendment. I conclude that the defendant's contacts with Ohio are insufficient to enable this court to exercise personal jurisdiction over it.

The Supreme Court has held that a defendant must have "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In articulating the grounds for personal jurisdiction resulting from a single act, the Sixth Circuit looks to three criteria:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable.

*CompuServe, Inc.,* 89 F.3d at 1263; *see also Reynolds v. International Amateur Athletic Fed'n,* 23 F.3d 1110, 1115 (6th Cir.1994); *LAK, Inc. v. Deer Creek Enterprises,* 885 F.2d 1293, 1299 (6th Cir.1989); *In–Flight Devices v. Van Dusen Air, Inc.,* 466 F.2d 220, 226 (6th Cir.1972); *Southern Mach. Co. v. Mohasco Indus.,* 401 F.2d 374, 381 (6th Cir.1968).

■ The first issue is whether the defendant purposefully availed itself of the privilege of "acting in" Ohio or "causing a

consequence" in Ohio. This "purposeful availment" prong is a "baseline requirement." *In–Flight Devices*, 466 F.2d at 228. A defendant satisfies the purposeful availment requirement when a defendant's contacts create a "substantial connection" with the forum state such that defendant "should reasonably anticipate being haled into court there." *CompuServe, Inc.*, 89 F.3d at 1263 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). The Supreme Court offers the following explanation:

> where the defendant "deliberately" has engaged in significant activities within a state or has created "continuing obligations" between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

*Burger King Corp.*, 471 U.S. at 475–476, 105 S.Ct. 2174 (1985) (citations omitted); *see also Highway Auto Sales, Inc.*, 943 F.Supp. at 830.

In determining what constitutes "significant" or "substantial" contacts, "the Supreme Court has determined that merely entering into a contract with a resident of the forum state, without more, does not 'automatically establish sufficient minimum contacts.'" *Highway Auto Sales Inc.*, 943 F.Supp. at 830 (quoting *Burger King Corp.*, 471 U.S. at 478, 105 S.Ct. 2174 (1985)); *see (also Hoopeston Canning Co. v. Cullen*, 318 U.S. 313, 316, 63 S.Ct. 602, 87 L.Ed. 777 (1943)). To make the determination, the court should evaluate prior negotiations, future consequences, and the terms of the contract. *Id.*

In the instant case, defendant's connections to Ohio were not so substantial that the defendant could reasonably anticipated be haled into an Ohio court. Prior to entering into the contract with Ohio Turbine, defendant's contact with Ohio amounted only to national advertising and telephone negotiations with Ohio Turbine representatives. Furthermore, defendant did not initiate contact with Ohio Turbine; it merely sent an informational brochure in response to Ohio Turbine's inquiry. Defendant never traveled to Ohio during the negotiation process; all personal meetings between defendant and Ohio Turbine representatives took place in Oklahoma. The work on the plaintiff's airframe was done in Oklahoma. The only direct contact defendant had with Ohio was shipping two aircraft engines to Ohio Turbine. Such contacts between the defendant and Ohio are insufficient to establish that defendant purposefully availed itself of the forum state.

Second, defendant's contacts with Ohio cannot be characterized as creating "continuing obligations" with plaintiff. "Continuing obligations" imply contacts of greater intensity and duration than a "one-shot deal." *See, e.g., Third Nat'l Bank v. WEDGE Group Inc.*, 882 F.2d 1087 (6th Cir.1989) (operating in the forum state and holding directors' meetings regularly in the forum state were enough to establish continuing obligations); *Serras v. First Tennessee Bank Nat'l Ass'n*, 875 F.2d 1212 (6th Cir.1989). In this case, there is no indication that defendant intended to enter into future contracts with Ohio Turbine or either plaintiff.

Continuing obligations create "a realistic and foreseeable impact upon the commerce of the forum state." *Weldon F. Stump & Co. v. Delta Metalforming Co.*, 793 F.Supp. 157, 159 (N.D.Ohio 1992). As previously stated, defendant sent the engines to Ohio for repairs only and the engines were to return to Oklahoma on

completion of that work. There is no evidence to indicate that the engines would remain in Ohio for any period of time after completion or were intended for sale or use in Ohio. In addition, defendant paid no money into Ohio in consideration for the repairs. The only goods to enter Ohio were the two engines. Such action cannot logically be labeled as "continuous" or resulting in economic consequences in Ohio.

Given the facts presented, defendant's contacts with Ohio were neither "significant," "substantial," nor "continuous." Thus, I hold that defendant did not purposefully avail itself of the privileges of the forum state and could not have reasonably anticipated being haled into court in Ohio. Therefore, personal jurisdiction over defendant is not constitutionally acceptable.

### C. Venue

Even if personal jurisdiction were appropriate in Ohio, the parties have consented to jurisdiction and venue in the Western District of Oklahoma in a related case. In the interest of justice, therefore, this case should be transferred to the Western District of Oklahoma, as it is a more appropriate venue. *See* 28 U.S.C. § 1631.

### CONCLUSION

It is, therefore,

ORDERED THAT defendant's Fed. R.Civ.P. 12(b)(2) and 12(b)(3) motions to dismiss or transfer for lack of personal jurisdiction and improper venue shall be granted.

The Clerk shall cause this case to be transferred to the United States District Court for the Western District of Oklahoma for further proceedings.

So ordered.