**KDI PRECISION PRODUCTS, INC., Plaintiff,**

v.

**RADIAL STAMPINGS, INC., et al., Defendants.**

No. C–1–84–904.

United States District Court, S.D. Ohio, W.D.

May 22, 1985.

Kenneth L. Byrne, Cincinnati, Ohio, for plaintiff.

Scott Loftus, Wayzata, Minn., Joseph Martineau, St. Louis, Mo., and William R. Ellis, Cincinnati, Ohio, for defendants.

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND MOTION TO QUASH

CARL B. RUBIN, Chief Judge.

This matter is before the Court on a Fed.R.Civ.P. 12(b)(2), (3) & (4) Motion to Dismiss the Complaint and Cross Claim for lack of *in personam* jurisdiction, insufficiency of process, and/or insufficiency of service of process filed by defendant Ocello Tool & Die Co., Inc., ("Ocello"), a Missouri corporation (doc. no. 13). In the alternative, defendant Ocello moves for an Order Quashing the Summons and Service of Summons (doc. no. 13). Co-defendant Radial Stampings, Inc., ("Radial"), a Minnesota corporation, has filed a memorandum contra defendant Ocello's entire motion (doc. no. 14) and plaintiff KDI Precision Products, Inc., ("KDI"), an Ohio corporation, has filed a similar memorandum contra (doc. no. 16). Defendant Ocello has replied to each memorandum (doc. no. 18). For the reasons stated below, the Motion to Dismiss the Complaint and Cross Claim is DENIED. Similarly, the request for an Order quashing the summons and service of summons also is DENIED.

Plaintiff KDI's Amended Complaint alleges that it entered into a contract with defendant Radial for "tooling" on February 18, 1983. (Amended Complaint at ¶ 3). KDI also alleges that it entered into a contract with Radial for a "machine" on April 6, 1983. (¶ 4). According to KDI, Radial understood that the two contracts were interdependent and that they collectively constituted the contract. (¶ 6). Plaintiff claims to have paid $21,546.30 to Radial for the "tooling" and "machine" (¶ 7), however, according to KDI, the delivered "tooling" and "machine" do not meet the agreed specifications (¶¶ 12, 15). Accordingly, KDI claims that Radial has breached its contract (¶¶ 13, 16), breached its warranty (¶¶ 20, 24, 28), and has been unjustly enriched (¶ 32). KDI also claims that Radial fraudulently induced KDI into contracting. (¶ 30).

KDI claims that defendant Ocello manufactured the "tooling" (¶ 34) and that Ocello was aware of KDI's needs regarding the "tooling" (¶ 35). KDI further claims that Ocello impliedly warranted the "tooling" (¶ 37) and that Ocello breached that warranty (¶ 38).

Radial has cross-claimed against Ocello alleging that if any wrongful acts occurred, Ocello was responsible (doc. no. 8 at 4).

Accordingly, Radial claims that Ocello is responsible for any liability to plaintiff KDI (doc. no. 8 at 4).

■ The Court first will address KDI's assertion that the entry of a default judgment against Ocello constitutes a waiver by Ocello of its right to assert any defenses under Rule 12(b) (doc. no. 16 at 3–6). However, in support of its argument, KDI cites no Sixth Circuit or Ohio District Court decisions (*see* doc. no. 16 at 4). Because KDI's assertion clearly is not the rule in this Circuit, the Court will consider Ocello's defenses on their merits.

The second inquiry prompted by this Motion focuses on Ocello's claim that it is an out-of-state corporation and that it has done no business in Ohio (doc. no. 13 at 2). Therefore, according to Ocello, long-arm jurisdiction is inappropriate under the Ohio Revised Code (doc. no. 13 at 2).

■ When considering the reach of personal jurisdiction in diversity cases, such as the instant action, federal courts must apply state law. *Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Further, in the United States Court of Appeals for the Sixth Circuit, the law is settled that a federal court sitting in a diversity matter must look to the law of the forum to bind a non-resident defendant, such as Ocello, by judgment *in personam. In-Flight Devices Corp. v. Van Dusen Air, Inc.,* 466 F.2d 220, 224 (6th Cir.1972); *Southern Machine Co. v. Mohasco Industries, Inc.,* 401 F.2d 374, 376 n. 2 (6th Cir.1968); *Smartt v. Coca-Cola Bottling Corp.,* 318 F.2d 447, 448 (6th Cir.1963).

The Ohio long-arm statute is found in Chapter 23 of the Ohio Revised Code. Section 2307.382 provides in pertinent part:

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

(1) Transacting any business in this state;

(2) Contracting to supply services or goods in this state; ...

(5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he might reasonably have expected such person to use, consume, or be affected by the goods in this state, provided that he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state....

Ohio Rev.Code Ann. § 2307.382 (Page 1981). Ocello claims that if the statute applies, its applicability falls under subsection (A)(2) or under subsection (A)(5) (doc. no. 13 at 4). Radial claims that subsections (A)(1) and (A)(2) apply (doc. no. 14 at 2), as does KDI (doc. no. 16 at 6). Both Radial and KDI concede that subsection (A)(5) does not apply (doc. no. 14 at 1; doc. no. 16 at 6). Therefore, the Court need not address Ocello's discussion regarding the inapplicability of subsection (A)(5).

■ The Sixth Circuit outlined the procedure a court must follow when deciding a motion to dismiss for lack of jurisdiction in *Welsh v. Gibbs,* 631 F.2d 436, 438 (6th Cir.1980), *citing O'Hare International Bank v. Hampton,* 437 F.2d 1173, 1176 (7th Cir.1971). The plaintiff bears the burden of establishing jurisdiction. 631 F.2d at 438; *Weller v. Cromwell Oil Co.,* 504 F.2d 927 (6th Cir.1974). However, if the Court determines to decide the issue on the basis of written materials only, the plaintiff need only make a *prima facie* case of jurisdiction. 631 F.2d at 438. The burden on the plaintiff is relatively slight and the Court "must consider the pleadings and affidavits in the light most favorable to the plaintiff." 631 F.2d at 438, *quoting Poston v. American President Lines, Ltd.,* 452 F.Supp. 568, 571 (S.D.Fla.1978). The plaintiff need only "demonstrate facts which support a finding of jurisdiction in order to avoid a motion to dismiss." 631 F.2d at 438, *quoting Data Disc, Inc. v. Systems Technology Associates, Inc.,* 557 F.2d 1280, 1285 (9th Cir.1977).

■ An inquiry into whether or not personal jurisdiction exists requires a two-step analysis. *Elliot Co., Inc. v. Caribbean Utilities Co.*, 513 F.2d 1176, 1179 (6th Cir. 1975). Initially, a court must determine if the legislature of the state has extended the jurisdictional reach of its courts to non-resident defendants. Secondly, if the jurisdictional reach extends to non-residents, the court must determine under the circumstances at hand, if jurisdiction can be extended consistent with due process. However, if the state legislature has authorized its courts to reach the full constitutional limits in pursuit of non-resident defendants, the two questions merge into one. *Id.*

At least with respect to the "transaction of any business" provision, *i.e.* subsection (A)(1), the Sixth Circuit has determined that the Ohio long-arm statute is intended to extend the jurisdiction of its courts to the constitutional limits. *Welsh*, 631 F.2d at 439; *see also Weller*, 504 F.2d at 933 (Phillips, C.J., dissenting); *In-Flight*, 466 F.2d at 224. The United States Supreme Court first defined the constitutional limit of jurisdiction over non-residents in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In *International Shoe*, the Court held that there must be "minimum contacts" with the forum state such that maintenance of the suit does not offend "traditional notions of fair play." *Id.* at 316, 66 S.Ct. at 158. *International Shoe* spawned numerous expansions of the "minimum contacts" requirement. *See, e.g., World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

The Sixth Circuit, based on *International Shoe* and its progeny, has employed a three-fold mode of analysis to assist it in determining whether or not a certain act or acts provides sufficient contact between a non-resident defendant and the forum state so as not to violate due process when asserting personal jurisdiction. *Welsh*, 631 F.2d at 440; *In-Flight*, 466 F.2d at 226. The test is as follows:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Machine Co.*, 401 F.2d at 381.

The *Southern Machine* test provides a framework for analyzing the dispute in the instant situation. The Court first will apply the test to subsection (A)(1) of the Ohio long-arm statute.

The first and second parts of the test involve a search for specific types of "contacts." The first aspect of the *Southern Machine* approach considers the purposeful doing of an act or causing of consequence in the forum state. In the Sixth Circuit, a party "has 'acted' so as to transact business in a state 'when obligations created by the defendant or business operations set in motion by the defendant have a realistic impact on the commerce of that state.' Such 'acts' become purposeful if the defendant 'should have reasonably foreseen that the transaction would have consequences in that state.'" *In-Flight*, 466 F.2d at 226, *quoting Southern Machine*, 401 F.2d at 382–83. Meeting this requirement poses a difficult challenge to KDI. However, the Court determines that the plaintiff successfully has met the challenge.

■ Ocello's president, Dennis M. Ocello, admits that he attended a meeting in Cincinnati, Ohio on January 5, 1984 with KDI and Radial (doc. no. 18 at 5). Mr. Ocello claims that he attended the meeting only as an advisor to Radial. However, Ocello does not dispute that it entered into a contract with Radial to manufacture and supply the "tooling" required for the operation of the "machine." The "tooling" and

the "machine" were the substance of the contract executed between Radial and KDI. Further, defendant Ocello tested parts provided by KDI to determine whether the "tooling" and "machine" could generate the result required by KDI (*see* Exhibit C). If the "tooling" is not sufficient, the "machine" is not effective and the contract is worthless. The Court must assume that Ocello recognized the importance of its part of the three-way transaction among KDI, Radial, and itself. Therefore, Ocello cannot be an "unsuspecting" defendant. *See In-Flight*, 466 F.2d at 226; *Hanson*, 357 U.S. at 253, 78 S.Ct. at 1239. Where the contract "required joint performance of [buyer], contractor, and subcontractor" the due process clause of the Fourteenth Amendment permits an Ohio District Court to exercise personal jurisdiction over an out of state subcontractor. *Biltmoor Moving & Storage Co. v. Shell Oil Co.*, 606 F.2d 202 (7th Cir.1979). Therefore, the Court concludes that Ocello created an "obligation" that it "should have reasonably foreseen" "would have a realistic impact on the commerce of Ohio." *See In-Flight*, 466 F.2d at 226.

■ The second part of the *Southern Machine* test requires a determination as to whether the cause of action arose from the business transacted in Ohio. The Court can dispose of this question shortly. KDI claims that defendant Ocello impliedly warranted the "tooling" (Amended Complaint at ¶ 37) and that Ocello breached that warranty (¶ 38). The cause of action arose from the contract negotiated in Ohio between KDI and Radial. Therefore, the second aspect of the *Southern Machine* test is met.

The Court must now consider the third part of the *Southern Machine* test: Did Ocello have sufficient contact with Ohio to make the exercise of jurisdiction over it reasonable? When resolving this aspect, the Court must consider the extent of Ohio's interest in the controversy. *See Southern Machine*, 401 F.2d at 384. Ohio clearly has an interest in resolving a suit brought by one of its residents. *See id.* at

385. Ohio has expressed a policy of securing to its businessmen the benefit of their bargains. *In-Flight*, 466 F.2d at 232. To hold a defendant responsible for his failure to perform the obligations imposed upon him by such a contract is consistent with this policy.

■ Although the strength of Ohio's interest in resolving the present dispute is significant in resolving part three of the *Southern Machine* test, other factors also are relevant. Courts have identified the sense of surprise suffered by a non-resident defendant as a factor making long-arm jurisdiction unfair. *In-Flight*, 466 F.2d at 233. However, based on the contacts of the parties discussed above, Ocello reasonably could have expected KDI's assertion of jurisdiction. Courts also have considered the nature and quantity of the defendant's physical contacts with the forum state as an indicator of fairness. *Id.* at 234. However, physical presence in the state is not a prerequisite to the assertion of jurisdiction over the defendant, *see Southern Machine*, 401 F.2d at 382, nor does its existence alone establish a sufficient basis for such jurisdiction. *Id.* at n. 18. "A letter or a telephone call may, in a given situation, be as indicative of substantial involvement with the forum state as a personal visit by the defendant or its agents." *In-Flight*, 466 F.2d at 235. "The soliciting of insurance by mail, the transmission of radio broadcasts into a state, and the sending of magazines and newspapers into a state to be sold there by independent contractors" have been held to constitute the transaction of business in a state. *Southern Machine*, 401 F.2d at 382 (citations omitted). The Court considers Ocello's trip to Cincinnati, Ocello's importance to the contract between Radial and KDI, and Ocello's testing of the "tooling" as indicative of Ocello's interest in KDI's Ohio activities. *See In-Flight*, 466 F.2d at 235. Therefore, the third and final part of the *Southern Machine* test is met.

■ Based on the above discussion, the Court concludes that KDI has established a *prima facie* case of personal jurisdiction

over defendant Ocello. Ocello had "minimum contacts" with Ohio, and KDI's out-of-state service did not offend traditional notions of fair play. *International Shoe,* 326 U.S. at 310, 66 S.Ct. at 154. Based on this conclusion, the Court need not analyze subsection (A)(2) of the Ohio long-arm statute.

■■■ The Court next must evaluate defendant Ocello's claim of insufficient process and/or insufficient service of process. Ocello asserts that KDI attempted service on it pursuant to Rule 4(c)(2)(C)(ii) (doc. no. 13 at 8). According to Ocello, such service-by-mail mechanism is not available in cases like the instant action where the federal court predicates its jurisdiction on the forum state's long-arm statute (doc. no. 13 at 8). Rather, Ocello contends that the federal court must look to the service provisions of the forum state's long-arm statute as dictated in Federal Rule 4(e) (doc. no. 13 at 8–9). KDI asserts that Ocello's contentions are permissive, not mandatory (doc. no. 16 at 13). Alternatively, KDI claims that its service of process on Ocello, though not strictly in accord with the provisions under the Ohio long-arm statute, substantially complies with the statute's requirements (doc. no. 16 at 14–15). Thus, according to KDI, its noncompliance is negligible and represents a mere technicality (doc. no. 16 at 14–15).

The Court agrees with KDI's alternative theory. Rule 4.3 of the Ohio Rules of Civil Procedure specifically sets forth the Ohio requirements of service of process on out-of-state defendants. The pertinent provision of the Rule provides for service by certified mail and return receipt requested. *See* Ohio R.Civ.P. 4.3(B)(1). Plaintiff KDI served the Summons and Complaint by first class ordinary mail with an enclosed acknowledgment form. Ocello completed the acknowledgment of receipt of Summons and Complaint and returned it to Kenneth L. Byrne, counsel for plaintiff KDI (doc. no. 11 at 1). In essence, the acknowledgment form performed the same function as the return receipt in a certified mailing. This asserted non-compliance

with Ohio Rule 4.3(B)(1) represents a "time-consuming and justice-defeating technical-it[y]." *Smith v. Peters,* 482 F.2d 799, 803 (6th Cir.1973), *quoting Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 467, 82 S.Ct. 913, 916, 8 L.Ed.2d 39 (1962). The Court at this time advances no position regarding the mandatory/permissive language of Federal Rule 4(e).

In summary, defendant Ocello's Motion to Dismiss the Complaint and Cross Claim for Want of Personal Jurisdiction and Insufficient Process and/or Service of Process (doc. no. 13) is DENIED. Similarly, Ocello's alternative request for an Order to Quash the Summons and Service of Summons (doc. no. 13) is DENIED.

IT IS SO ORDERED.