NORVEL LTD., NCV Ltd., and Great White Fleet, Ltd., Plaintiffs,

v.

ULSTEIN PROPELLER AS, Ulstein Industrier AS and Ulstein USA, Inc., Defendants.

No. 00 Civ. 0055 LAP.

United States District Court, S.D. New York.

March 30, 2001.

*MEMORANDUM AND ORDER*

PRESKA, District Judge.

Plaintiffs, Norvel, Ltd. ("Norvel"), NCV Ltd. ("NCV"), and Great White Fleet, Ltd. ("GWF") bring this admiralty and maritime action for various state law claims including breach of express and implied warranties, negligence, gross negligence, and product liability. Defendants Ulstein Propeller AS ("Ulstein Propeller"), Ulstein Industrier AS ("Ulstein Industrier"), and Ulstein USA, Inc. ("Ulstein USA") move to dismiss plaintiffs' complaint pursuant to Fed.R.Civ.P. 12(b)(1), (2) and (3), for lack of subject matter[1] and personal jurisdiction and improper venue.

1. The parties briefed the issue of subject matter jurisdiction at my request.

For the reasons set forth below, defendants' motion to dismiss the complaint for lack of subject matter jurisdiction is denied, defendants' motion to dismiss for lack of personal jurisdiction is granted, and defendants' motion to dismiss for improper venue is denied as moot.

## BACKGROUND

Plaintiffs are foreign corporations that owned, operated, and managed ships in the foreign commerce of the United States. (Compl.¶¶ 3–5.) Plaintiff GWF had places of business in the United States. (Compl.¶ 5.)

The M/V Chiquita Frances ("Frances") is a refrigerated cargo ship which was owned by Norvel and managed, operated, and chartered by GWF. (Compl.¶¶ 3, 9–10.) In January 1997, during the course of a drydocking in Tampa, Florida, GWF discovered damage to an "Ulstein"-manufactured [2] controllable pitch propeller ("CPP") on the Frances. (Compl.¶¶ 9, 11.) Temporary repairs were made, and the Frances underwent a second drydocking in Hamburg, Germany to replace the spare parts which were delivered by Ulstein. (Compl.¶¶ 11–12.)

The M/V Chiquita Jean ("Jean") is a refrigerated cargo ship which was owned by Norvel, and managed, operated, and chartered by GWF. (Compl.¶¶ 3, 13–14.) In January 1998, during a drydocking in Falmouth, England, GWF discovered damage to the vessel's CPP which was manufactured and supplied by Ulstein. (Compl.¶¶ 13, 15.) Temporary repairs were made to the CPP, and its hub has been or will be replaced with a new design. (Compl.¶ 16.)

The M/V Chiquita Brenda ("Brenda") is a refrigerated cargo ship which was owned by NCV, and managed, operated, and chartered by GWF. (Compl.¶¶ 4, 17.) In January 1998, during a drydocking in Balboa, Panama, GWF discovered damage to the CPP which was manufactured and supplied by Ulstein. (Compl.¶¶ 19, 17.) A complete CPP assembly was purchased and installed to replace the damaged CPP. (Compl.¶ 20.)

The M/V Chiquita Elke ("Elke") is a refrigerated cargo ship owned by NCV, and managed, operated and chartered by GWF. (Compl ¶¶ 4, 21.) In January 1999, during a drydocking in Hamburg, Germany, GWF discovered damage to the CPP which was manufactured and supplied by Ulstein. (Compl.¶¶ 21, 23.) The Elke was fitted with replacement parts. (Compl.¶ 24.)

The M/V Chiquita Joy ("Joy") is a refrigerated cargo ship owned by NCV and managed, operated and chartered by GWF. (Compl.¶¶ 4, 25–26.) In January 1999, during a drydocking in Germany, GWF discovered damage to the CPP which was manufactured and supplied by Ulstein. (Compl.¶¶ 25, 27.) The Joy was fitted with replacement parts. (Compl.¶ 28.)

Defendant Ulstein USA is a Louisiana corporation. (Declaration of Frode Rodven (April 2000) (Rodven Decl. No. 1") ¶ 6.) [3] Ulstein USA advertises in shipping periodicals that are targeted to selling its products in the United States. (Affidavit of Richard Reisert ("Reisert Aff.") ¶ 6 and Ex. 2.)

Defendant Ulstein Propeller is a Norwegian corporation. (Rodven Dec. No. 1,

---

**2.** The term "Ulstein" is used whenever plaintiffs have failed to identify which "Ulstein" defendant they are referring to.

**3.** In July 2000, Ulstein USA changed its name to UU Inc. and was re-incorporated in Delaware. (Declaration of Kenneth A. Main ("Main Decl.") ¶ 4.)

¶ 4.) Ulstein Propeller solicited GWF with respect to supplying CPP systems for the vessels. (Declaration of James W. Parker ("Parker Decl.") ¶ 5.) This solicitation included "proposals, technical discussions, service and maintenance discussions, and other communications and meetings with and at GWF's offices in Cincinnati," Ohio. (*Id.*) Ulstein Propeller promoted its ability to maintain and service CPP systems in the United States and throughout the world. (*Id.* ¶ 6.) In October 1996, the Frances was scheduled for routine dry-docking in Tampa, Florida. (*Id.* ¶ 8.) A field service engineer from Ulstein Propeller was present at the survey in Tampa for investigating propeller damage allegedly sustained by the ship. (*Id.* Ex. 3 at 1.)

Defendant Ulstein Industrier is a Norwegian corporation. (Rodven Decl. No. 1, ¶ 5.) Ulstein Industrier is a frequent advertiser in Marine Log, a magazine which is published in New York and is circulated throughout the United States. (Reisert Aff. ¶ 6 and Exh. 2.) Ulstein Industrier also exhibits its products and services at the International WorkBoat Show in New Orleans, Louisiana. (*Id.* ¶ 11 and Exh. 7a.)

## DISCUSSION

### I. Subject Matter Jurisdiction

#### A. Standard Applicable to Motion to Dismiss

█ In considering a motion to dismiss under Rule 12(b)(1), I must view the complaint in the light most favorable to the plaintiff. *See Yoder v. Orthomolecular Nutrition Inst., Inc.,* 751 F.2d 555, 562 (2d Cir.1985). In considering a motion to dismiss under Rule 12(b)(1), a court must "accept as true all material factual allegations in the complaint." *Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.,* 968 F.2d 196, 198 (2d Cir.1992) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683,

40 L.Ed.2d 90 (1974)). "However, argumentative inferences favorable to the party asserting jurisdiction should not be drawn." *Atlantic Mut. Ins.,* 968 F.2d at 198 (citing *Norton v. Larney,* 266 U.S. 511, 515, 45 S.Ct. 145, 69 L.Ed. 413 (1925)). Further, a "court may resolve disputed jurisdictional fact issues by reference to evidence outside the pleadings, such as affidavits." *Antares Aircraft, L.P. v. Federal Republic of Nigeria,* 948 F.2d 90, 96 (2d Cir.1991), *vacated for reconsideration on other grounds,* 505 U.S. 1215, 112 S.Ct. 3020, 120 L.Ed.2d 892 (1992), *reaff'd on remand,* 999 F.2d 33 (2d Cir.1993).

#### B. Admiralty Jurisdiction

Plaintiffs state that their claims fall within the Court's admiralty jurisdiction and supplemental jurisdiction pursuant to 28 U.S.C. ¶ 1367. Defendants assert that none of plaintiffs' claims fall under the admiralty jurisdiction of this Court thus precluding any supplemental jurisdiction of the Court. For purposes of this subject matter jurisdiction analysis, plaintiffs have alleged two categories of claims: (1) breach of express and implied warranties, and (2) negligence and products liability claims.

##### 1. Breach of Express and Implied Warranties

█ Plaintiffs allege that the Ulstein defendants owed plaintiffs express and implied warranties that defendants "designed, manufactured, inspected, tested, sold, delivered, installed and repaired the CPP ... in a safe, suitable and workmanlike manner, and that such CPP [was] merchantable and fit for [its] intended purpose." (Compl.¶ 30.) Plaintiffs allege that they were the beneficiaries of these warranties, that they relied on these warranties, and that the Ulstein defendants breached "their implied warranties con-

cerning the characteristics, merchantability and fitness for intended [sic] purpose of the CPP." (Compl.¶¶ 33–34, 38.)

■ It is well settled law that disputes involving "contracts relating to the construction of or supply of materials to a ship" and "warranty claims grounded in such contracts" are not within the admiralty jurisdiction of a court. *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 872 n. 7, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986) (finding that if plaintiffs' claims "were brought as breach-of-warranty actions, they would not be within the admiralty jurisdiction"). Accordingly, plaintiffs' breach of express and implied warranty claims are not within this Court's admiralty jurisdiction. *See, e.g., Boson Marine 6, Ltd. v. Crown Point Indus.*, 854 F.2d 46, 48 (5th Cir.1988) (holding that district court correctly dismissed breach of warranty claims for lack of subject matter jurisdiction).

2. Negligence and Products Liability Claims

■ Plaintiffs also allege claims of negligence and strict liability as a result of the allegedly defective CPPs manufactured and supplied by the Ulstein defendants. Plaintiffs claim that the damage to the CPPs and their parts was discovered on all five vessels while in drydock. (Compl.¶¶ 11, 15, 19, 23, 27.) Concepts of products liability are a part of general maritime law. To determine whether a tort is maritime in nature, the Court must apply the "situs" and "nexus" tests set forth in *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972). *See Employ-*

*ers Ins. of Wausau v. Suwannee River Spa Lines, Inc.*, 866 F.2d 752, 759 (5th Cir.1989).

Plaintiffs' "claims satisfy the traditional 'locality' requirement—that the wrong must have occurred on the high seas or navigable waters." *East River*, 476 U.S. at 863–64, 106 S.Ct. 2295. Damage to the vessels was discovered while in drydock, a "maritime locale." *Id.* at 864, 106 S.Ct. 2295. Plaintiffs have also established a maritime nexus—the vessels were engaged in maritime commerce, *id.*, operating under a contract of affreightment to Chiquita International, Ltd., (Compl.¶¶ 10, 14, 18, 22, 26.).

■ Although not presented by these motions, I note that plaintiffs' product liability and negligence claims do not state a claim under admiralty law because "no products liability claim lies in admiralty when the only injury is economic loss." *East River*, 476 U.S. at 876, 106 S.Ct. 2295. "[A] manufacturer in a commercial relationship has no duty under either a negligence or strict products liability theory to prevent a product from injuring itself." *Id.* at 871–72, 106 S.Ct. 2295 (finding that "[d]amage to a product itself is most naturally understood as a warranty claim"). Plaintiffs' claims are for damage to the "product itself" for economic loss. Nevertheless, whether plaintiffs ultimately may recover for these torts "is not a question of admiralty jurisdiction but of substantive maritime law."[4] *See Employers Ins. of Wausau*, 866 F.2d at 759; *but see Boson Marine 6, Ltd.*, 854 F.2d at 48. Accordingly, this Court has admiralty jurisdiction over plaintiffs' claims for negligence and products liability and supplemental juris-

---

**4.** Plaintiffs' claims do not fall within the two exceptions to this rule which allow "[a] suit to be dismissed for want of jurisdiction when (1) the allegations are clearly concocted for the sole purpose of obtaining federal jurisdiction,

or (2) the claims are 'wholly insubstantial and frivolous.' " *Employers Ins. of Wausau*, 866 F.2d at 759 (quoting *Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946)).

diction over the remaining claims. Defendants' motion to dismiss for lack of subject matter jurisdiction is denied.

## II. Personal Jurisdiction

### A. Standard Applicable to Motion to Dismiss for Lack of Personal Jurisdiction

 As a preliminary matter, I note that plaintiff bears the ultimate burden of establishing that the court has jurisdiction over the defendant. *Kernan v. Kurz–Hastings, Inc.*, 175 F.3d 236, 240 (2d Cir.1999); *Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 566 (2d Cir.1996). The burden of proof a plaintiff must meet varies with the procedural posture of the case. Prior to discovery, a plaintiff need only make a prima facie showing through its pleadings and affidavits that jurisdiction exists. *Id.* (citing *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir.1990)). In determining whether the plaintiff has met this burden on a Rule 12(b)(2) motion, the court must assume that all of the plaintiff's factual allegations are true and all "doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party." *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir.1993). Ultimately, however, the plaintiff must establish personal jurisdiction "by a preponderance of the evidence, either at an evidentiary hearing or at trial." *Id.* at 79.

### B. Long–Arm Statutes

#### 1. CPLR §§ 301 and 302

 Personal jurisdiction in an admiralty case is determined first by the law of the forum state. *Klinghoffer v. S.N.C. Achille Lauro Ed Altri–Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 937 F.2d 44, 50 (2d Cir.

1991). Accordingly, New York law governs here. The only possible bases for jurisdiction under New York law are New York Civil Practice Law & Rules ("CPLR") §§ 301 and 302.

In their motion to dismiss, defendants argue that they have no contacts with New York—defendants have no employees, bank accounts, mailing addresses, telephone listings, or property in New York, they do not solicit business in New York, and they have never contracted with any of the plaintiffs or made or supervised any repairs on any of the products relating to this action in New York. Plaintiffs concede that defendants have no contacts with New York; rather, plaintiffs assert that personal jurisdiction is based on Fed.R.Civ.P. 4(k)(2) pursuant to defendants' contacts with the United States as whole, not on its contacts with any particular state. Accordingly, both sides agree that there is no jurisdiction based CPLR §§ 301 and 302.

#### 2. Rule (4)(k)(2)

 Plaintiffs contend that jurisdiction is proper under Fed.R.Civ.P. 4(k)(2). Rule 4(k)(2) allows for jurisdiction over any defendant "who is not subject to the jurisdiction of the courts of general jurisdiction of any State" provided that:

(1) [the] plaintiff's cause of action arise[s] under federal law; (2) ... the defendant is not subject to the jurisdiction of the courts of any one State; and (3) ... the defendant's total contacts with the United States as a whole are sufficient to confer the court with personal jurisdiction without offending due process.

*Aerogroup Int'l, Inc. v. Marlboro Footworks, Ltd.*, 956 F.Supp. 427, 434 (S.D.N.Y.1996); *Mutualidad Seguros Del Institutuo Nacional De Industria v. M.V. Luber*, No. 95 Civ. 10988, 1998 WL 1108936,*2 (S.D.N.Y. Sept. 25, 1998).

■ The first requirement of Rule 4(k)(2) demands that the plaintiffs' claims arise under federal law. Plaintiffs have alleged admiralty and maritime claims. Admiralty and maritime cases arise under federal law for purposes of Rule 4(k)(2). *See United Trading Comp. v. M/V Sakura Reefer*, 95 Civ. 2846, 1996 WL 374154, *2, 1996 U.S. Dist. Lexis 9190, at 7 (S.D.N.Y. June 28, 1996); *World Tanker Carriers Corp. v. MV Ya Mawlaya*, 99 F.3d 717, 723 (5th Cir.1996); *West Africa Trading & Shipping Co. v. London Int'l Group*, 968 F.Supp. 996, 999 (D.N.J.1997). Plaintiffs have satisfied the first prerequisite to Rule 4(k)(2).

The next step in ascertaining Rule 4(k)(2) applicability is determining whether defendants are subject to jurisdiction in any other state. *See Stewart v. Adidas A.G.*, No. 96 Civ. 6670, 1997 WL 218431, at *3 n. 4 (S.D.N.Y. April 30, 1997) (Rule 4(k)(2) only applies "where jurisdiction cannot be found in any state in the United States"); *National Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 86 F.Supp.2d 137, 141 (E.D.N.Y.2000). Plaintiffs initially failed to brief this issue; instead, they focused on the defendants' contacts with the United States as a whole. With few exceptions, plaintiffs lumped together the three defendants and referred to Ulstein's contacts with the United States, rather than detailing the specific contacts of each individual defendant. I asked the parties to brief the issue of whether each individual defendant is subject to the jurisdiction of any other state. Plaintiffs limited their brief to Ulstein Propeller's contacts with the states of Florida and Ohio and stated that plaintiffs would drop the remaining

defendants if it were determined that personal jurisdiction over Ulstein Propeller exists.

**(a) Ulstein Propeller**

Defendant Ulstein Propeller is a Norwegian corporation. (Rodven Decl. No. 1, ¶ 4.) Plaintiffs assert that Ulstein Propeller is subject to personal jurisdiction in the states of Florida and Ohio.

**(i) Florida**

■ Under Florida law, personal jurisdiction is established if plaintiff satisfies the requirements of Florida's long-arm statute, Fl. Stat. Ann. § 48.193, and the constitutional due process requirement of minimum contacts with the state of Florida, *see deMco Techs., Inc. v. C.S. Engineered Castings, Inc.*, 769 So.2d 1128, 1129–30 (Fla.App.2000). "[J]urisdiction under Florida's long-arm statute requires greater activities or contacts than those demanded by the due process clause [of the United States Constitution]." *Lauzon v. Joseph Ribkoff, Inc.*, 77 F.Supp.2d 1250, 1253, 1255 (S.D.Fla.1999) (noting that Florida long-arm statute is strictly construed and that "Florida courts require substantial proof before extending *in personam* jurisdiction over non-resident defendants"). Plaintiffs allege that the Ulstein Propeller's contacts with Florida satisfy sections (1)(a), (b), and (f)(1) of the Florida long-arm statute which provide that jurisdiction is satisfied if "the defendant[s] 'engage in' or 'carry on' a business or business venture in the state, commit a tortious act in the state, or engage in solicitation or service activities within the state."[5] *Oriental Imports &*

---

5. The statute provides that:
(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself ... to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:

*Exports, Inc. v. Maduro & Curiel's Bank, N.V.,* 701 F.2d 889, 891.

Section 48.193(1)(a) of the Florida long-arm statute provides for personal jurisdiction over defendants who are "conducting, engaging in, or carrying on a business" in Florida. Whether a nonresident conducts "business in Florida concerns the nature, not the extent, of the nonresident's activities in Florida." *Oriental Imports & Exports,* 701 F.2d at 892. In order to determine whether a defendant is carrying on a business in the state, " '[t]he activities of the [defendant] sought to be served ... must be considered collectively and show a general course of business activity in the State for pecuniary benefit.' " *Sculptchair v. Century Arts, Ltd.,* 94 F.3d 623, 627 (11th Cir.1996) (quoting *Dinsmore v. Martin Blumenthal Assocs., Inc.,* 314 So.2d 561, 564 (Fla.1975)) (finding that sporadic sales efforts and revenue generated therefrom was sufficient to qualify as general course of business activity in Florida for pecuniary benefit, but that limited intermediary activities which amounted to series of telephone activities and single meeting in Florida did not qualify as course of activity). "While much is not required to establish a general course of business activity for pecuniary benefit, there still must be a 'course' of activity, that is, more than mere fortuity must be involved." *Insight Instruments, Inc. v. A.V.I.—Advanced Visual Instruments, Inc.,* 44 F.Supp.2d 1269, 1271 (M.D.Fla.

(a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
(b) Committing a tortious act within this state.

. . . . .

(f) Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:

1999) (finding that evidence of two isolated sales separated in time by four years failed to show general course of activity for pecuniary benefit in Florida); *see also Elmex Corp. v. Atlantic Fed. Sav. & Loan Assoc.,* 325 So.2d 58, 63 (Fla.Dist.Ct.App.1976) (holding that one single, isolated shipment of goods into state not "doing business" in Florida).

Plaintiffs assert that several of the vessels made numerous port calls in Florida, whereby continuous damage was sustained to the vessels. (Declaration of Gerard P.D. Coleridge ("Coleridge Decl.") ¶¶ 6–7.) The damage to the FRANCES was discovered while it was in port in Florida. Ulstein Propeller directed its service engineers to Florida to assess the damage to the propeller system of the FRANCES. (*Id.* ¶ 2.) Plaintiffs allege that Ulstein Propeller sold and delivered the parts necessary to repair the propeller system installed on the FRANCES while it was in Florida. (*Id.* ¶ 3.)

Plaintiffs have failed to establish that defendant Ulstein Propeller was engaged in a general "course" of activity for pecuniary benefit in Florida. While plaintiffs have alleged certain contacts to Florida, those contacts do not amount to the purposeful activity required by the Florida long-arm statute. That the damage to the FRANCES was discovered while she was in Florida was a mere fortuity over which Ulstein Propeller had no control. Service

1. The defendant was engaged in solicitation or service activities within this state; or
2. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.
Fla. Stat. Ann. §§ 48.193(1)(a), (b), and (f)(1).

engineers were sent and parts were sold by Ulstein Propeller to plaintiffs only in connection with the single instance of warranty work on the FRANCES; the parts were not offered for sale elsewhere in Florida or the United States. (See Def. Ltr. (December 20, 2000) at 4, n. 5.) Accordingly, plaintiffs have failed to demonstrate jurisdiction under section 48.193(1)(a) of the Florida long-arm statute for Rule 12(b)(2) purposes.

■ Plaintiffs also appear to allege that Ulstein Propeller now has an office in Florida. Plaintiffs assert that "[i]n 1999, Vickers plc . . . acquired the Ulstein Group (excluding their shipbuilding business) [and thereafter], Propeller was renamed Vickers Ulstein Marine Systems." (Herbert Aff. ¶ 5.) "Later in 1999, Rolls–Royce acquired Vickers." (Id. ¶ 6.) Guy W. Herbert, counsel to plaintiffs, asserts that he "called Rolls–Royce's listed number in Fort Lauderdale, Florida" and stated that he "was looking for Ulstein Propeller." (Id. ¶ 11.) Mr. Herbert was told, " 'That's us, we bought Ulstein Propeller about a year ago. Their [sic] one of our brand names." ' (Id.) Mr. Herbert explained that he was actually "looking for Ulstein's customer service and spare parts warehouse in Fort Lauderdale" and was told " 'That's us, right here" ' and was given a Fort Lauderdale address for Ulstein Propeller. (Id.)

Section 1(a) provides for jurisdiction "for any cause of action arising from" a defendant's "having an office" in Florida. Plaintiffs discovered the damage to the propeller systems on all of the vessels by January 1999. (See Compl. ¶¶ 11, 15, 19, 23, 27.) Thus, plaintiffs' causes of action clearly arose prior to the time that Ulstein Propeller "ha[d] an office" in Florida. Plaintiffs have failed to establish personal jurisdiction through section 1(a) of the long-arm statute.[6]

■ Section 1(b) of the Florida long-arm statute provides that jurisdiction is satisfied when the defendant commits a tortious act in Florida. Plaintiffs have failed to establish that Ulstein Propeller committed any tortious acts in Florida. See Horowitz v. Laske, 751 So.2d 82, 86 (Fla.Dist.Ct.App.1999); Oriental Imports & Exports, Inc., 701 F.2d at 894 (finding that occurrence of injury alone in Florida does not satisfy statutory test). Plaintiffs have also failed to demonstrate for Rule 12(b)(2) purposes that defendants committed a tortious act outside of Florida which resulted in an injury in Florida—plaintiffs' conclusory assertions that "excessive wear and damage to the subject Vessels [was suffered] while they were being operated both within and without the State of Florida" do not persuade me to the contrary. See Kim v. Keenan, 71 F.Supp.2d 1228, 1233 (M.D.Fla.1999) (noting that "Florida courts are 'deeply divided' on the issue of whether a tortious act committed outside the state resulting in the state produces personal jurisdiction under § 48.193(1)(b)").

■ Finally, plaintiffs argue that Ulstein Propeller caused economic injury to plaintiffs under section 48.193(1)(f) by Ulstein Propeller's soliciting and/or marketing efforts in Florida. Personal "juris-

---

**6.** Plaintiffs have not alleged that Ulstein Propeller is subject to jurisdiction under Section 2 of the Florida long-arm statute which states that "[a] defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the clam arises from that activity." For Rule 12(b)(2) purposes, plaintiffs have failed to allege or show "substantial and not isolated activity" by Ulstein Propeller in Florida such that it would be subject to the general jurisdiction of that state.

diction is not proper under section (1)(f) where financial harm is the sole injury." *Kim*, 71 F.Supp.2d at 1234; *Sculptchair, Inc.*, 94 F.3d at 629 ("It is well-established, however, that mere economic injury without accompanying personal injury or property injury does not confer personal jurisdiction over nonresident defendants under section 48.193(1)(f)."). Because plaintiffs "have neither alleged nor proven personal injury or property damage aside from the purely economic loss pleaded in its complaint, [I] find no basis for asserting personal jurisdiction over [Ulstein Propeller] under section 48.193(1)(f)." *Sculptchair, Inc.*, 94 F.3d at 629.

Plaintiffs have failed to establish personal jurisdiction over Ulstein Propeller under the Florida long-arm statute.

### (ii) Ohio

■ Plaintiffs next allege that Ulstein Propeller is subject to personal jurisdiction in Ohio. Plaintiffs assert jurisdiction under section (A)(1) of the Ohio long-arm statute which provides that "[a] court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's ... [t]ransacting any business in this state." Ohio R.C. § 2307.382.

■ The "transacting business" clause of the Ohio long-arm statute "means 'to carry on business' and 'to have dealings,' and is 'broader than the word "contract."'" *Highway Auto Sales, Inc. v. Auto–Konig of Scottsdale, Inc.*, 943 F.Supp. 825, 828–29 (N.D.Ohio 1996) (internal citations omitted) (noting that although Sixth Circuit has construed "transacting business" as extending to outer limits of due process, Ohio Supreme Court

has stated that it is erroneous to extend long-arm statute to limits of due process); *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St.3d 73, 559 N.E.2d 477, 480 (1990) (quoting Black's Law Dictionary in defining "transacts" as "'to prosecute negotiations; to carry on business; to have dealings.... The word embraces in its meaning the carrying on or prosecution of business negotiations but it is a broader term than the word "contract" and may involve business negotiations which have been either wholly or partly brought to a conclusion.'").

Defendants admit that Ulstein Propeller attended two meetings in February 1991 and June 1992 in Ohio with representatives from Plaintiff Great White Fleet and Kvaerner Kleven AS, the shipbuilder. (Declaration of Frode Rodven (December 20, 2000) ("Rodven Decl. No. 2") ¶ 6.) Defendants assert that the purpose of these meetings was merely informational and that Ulstein Propeller "was only a participant through its connection with Kvaerner Kleven AS and because it manufactured and supplied the propeller assemblies pursuant to a contract with Kvaerner Kleven AS." (Def. Ltr. Br. (December 20, 2000) at 5.) Plaintiffs assert that Ulstein Propeller also sent a representative to Great White Fleet's offices in Ohio in February 1992 to discuss the propulsion systems.[7] This meeting is documented by a contemporaneous fax from Ulstein Propeller acknowledging the meeting and providing material "asked for regarding propulsion and wake evaluation." (Affidavit of Guy W. Herbert ("Herbert Aff.") ¶ 9, Exh. 4.)

Plaintiffs have satisfied the statutory requirement of the Ohio long-arm statute. They have demonstrated for Rule 12(b)(2) purposes that Ulstein Propeller attended

---

**7.** In their December 20, 2000 letter in support of the motion to dismiss, defendants deny that they attended the February 1992 meeting but fail to evidence that assertion through an affidavit.

several meetings in Ohio with plaintiffs to discuss the propeller systems and forwarded information to plaintiffs in Ohio on the propeller systems. "These interactions can properly be considered 'dealings' which bring defendant's actions within Ohio's long-arm statute." *Highway Auto Sales, Inc.*, 943 F.Supp. at 829.

The second jurisdiction requirement in Ohio is to determine, "[a]s required by the due process clause of the Constitution," whether Ulstein Propeller has " 'minimum contacts' with the forum state 'such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." ' " *Id.* at 829 (quoting *International Shoe v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). Three criteria are used to determine whether a non-resident has sufficient contacts with the forum state:

First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable.

*CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1263 (6th Cir.1996).

The first two parts "of the test involve a search for specific types of 'contacts' " in Ohio. *KDI Precision Prods., Inc. v. Radial Stampings, Inc.*, 620 F.Supp. 786, 790 (S.D.Ohio 1985). A defendant purposefully avails itself when its contacts with Ohio " 'proximately result from actions by the defendant . . . that create a "substantial connection" ' " with Ohio and when the defendant's conduct and connection with Ohio are such that it " 'should reasonably anticipate being haled into

court there.' " *CompuServe*, 89 F.3d at 1263 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *World–Wide Volkswagen v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980))) (finding that random, fortuitous, or attenuated contacts are not enough to hale defendant into Ohio). Defendant does not need to be physically present in the forum state as long as the defendant's "efforts are purposefully directed toward residents of" Ohio. *CompuServe*, 89 F.3d at 1264 (internal citations and quotations omitted). A party has purposefully acted when business operations set in motion by the defendant have a realistic impact on the commerce of Ohio and if the defendant "should have reasonably foreseen that the transaction would have consequences" in Ohio. *KDI Precision Products, Inc.*, 620 F.Supp. at 790 (internal quotations and citations omitted). The second part of test "requires a determination as to whether the cause of action arose from the business transacted in Ohio." *Id.* at 791. "If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." *CompuServe*, 89 F.3d at 1267.

Ulstein Propeller attended several meetings with plaintiff GWF and Kvaerner Kleven, AS ("Kvaerner Kleven"), the shipbuilder, in Ohio. At the very least, Ulstein Propeller provided information about the propeller systems at issue here during those meetings. Additionally, Ulstein Propeller forwarded information regarding the propellers to GWF in Ohio at GWF's request. (Herbert Aff. Exh. 4 (enclosing technical information and drawings related to the propellers); Parker Decl. Exh. 1.) The cause of action in this case concerns allegations that the propellers produced by

Ulstein Propeller were faulty. Ulstein Propeller's activity in Ohio was in furtherance of its subcontract with Kvaerner Kleven AS to produce the propellers (which was in furtherance of the contract to build the ships). *KDI Precision Prods., Inc.*, 620 F.Supp. at 791. Ulstein Propeller's "contacts with Ohio are certainly related to the facts of that controversy." *CompuServe*, 89 F.3d at 1267.

On the other hand, it is undisputed that the propellers were not manufactured in Ohio and did not sustain damage there. (Pl. Opp. Ltr. (December 18, 2000) at 13.) None of the contracts was entered into in Ohio.[8] At the time of the Ohio meetings, Ulstein Propeller had already contracted with Kvaerner Kleven to manufacture and supply propeller assemblies for its use. (Rodven Decl. No. 2, ¶ 7.) Because the contract had already been entered into and because, as demonstrated by the follow-up correspondence to the February 1992 meeting, (Herbert Aff. Tab 4), the Ohio contacts were only for the purpose of supplying information requested by plaintiff GWF, those contacts were insufficient to constitute solicitation.[9] The contract between Kvaerner Kleven and Ulstein Propeller, both foreign corporations, was entered into, negotiated and performed in a foreign country. (Def. Ltr. (December 20, 2000) at 7.) Plaintiffs are all foreign corporations, and only plaintiff GWF maintains an office in Ohio. The Ohio meetings occurred several years before any problems developed with the propeller systems on plaintiffs' vessels. Significantly, plaintiffs

have failed to demonstrate for Rule 12(b)(2) purposes that Ulstein Propeller's actions had an impact on Ohio commerce. "Taken as a whole, [these] transaction[s] did not involve 'substantial or significant' connections with the state of Ohio such that [Ulstein Propeller] would 'reasonably' expect to be haled into an Ohio court." *Highway Auto Sales, Inc.*, 943 F.Supp. at 831. Likewise, plaintiffs have failed to demonstrate that Ulstein Propeller established an ongoing relationship with GWF which created "a realistic and foreseeable impact upon the commerce" of Ohio. *Id.* (internal citations omitted).

Plaintiffs have failed to demonstrate jurisdiction under the Ohio long-arm statute. Because I find that no one state may exercise personal jurisdiction over Ulstein Propeller, "I must now turn to Rule 4(k)(2) and ascertain whether exercising jurisdiction would be 'consistent with the Constitution.'" *Aerogroup Int'l, Inc. v. Marlboro Footworks, Ltd.*, 956 F.Supp. 427, 438 (S.D.N.Y.1996).

### (iii) United States Contacts

 The due process jurisdictional inquiry is a two step-process: "the 'minimum contacts' inquiry and the 'reasonableness' inquiry." *Id.* at 428–39 (quoting *Metropolitan Life Ins. v. Robertson–Ceco Corp.*, 84 F.3d 560, 567 (2d Cir.1996)).

### a. Minimum Contacts

 To determine personal jurisdiction under Rule 4(k)(2), "courts have

---

**8.** This fact distinguishes this case from *KDI Precision Products, Inc. v. Radial Stampings, Inc.*, 620 F.Supp. 786, 791 (1985) (internal citations omitted) in which the court found that a subcontractor was not an "unsuspecting" defendant—"where a contract 'required joint performance of [buyer], contractor, and subcontractor'" and that "the due process clause of the Fourteenth Amendment permits an Ohio District Court to exercise personal jurisdiction over an out of state subcontrac-

tor." The cause of action in *KDI* arose "from the contract negotiated in Ohio" between the plaintiffs and the contractor. *Id.*

**9.** Plaintiffs' conclusory assertions that Ulstein Propeller "solicited" GWF with respect to supplying CPP systems for vessels, (*see, e.g.*, Parker Decl. ¶ 5), are insufficient to counter the more detailed, undisputed information noted above.

engaged in the traditional minimum contacts analysis based on an aggregation of the defendant's contacts with the nation as a whole." *Aerogroup Int'l, Inc.,* 956 F.Supp. at 439. In order to find the exercise of jurisdiction to be proper, I must determine that Ulstein Propeller "has purposefully directed [its] activities at residents of the forum, and the litigation results from alleged injuries that arise out of or related to those activities." [10] *Id.* at 440 (internal quotations and citations omitted).

The Second Circuit has addressed the question of what activities of a foreign corporation satisfy the minimum contacts test and has listed the following factors for meeting the standard: (1) transacting business in the United States, (2) doing an act in the United States, or (3) having an effect in the United States by an act done elsewhere. *Eskofot,* 872 F.Supp. at 87 (citing *Leasco Data Processing Equip. Corp. v. Maxwell,* 468 F.2d 1326, 1340 (2d Cir.1972)).

Defendants admit that Ulstein Propeller attended two meetings in February 1991 and June 1992 in Ohio with representatives from plaintiff Great White Fleet, an Ohio resident, and Kvaerner Kleven, the shipbuilder. (Rodven Decl. No. 2, ¶ 6.) Defendants assert that the purpose of these meetings was merely informational and that Ulstein Propeller "was only a participant through its connection with Kvaerner Kleven AS and because it manufactured and supplied the propeller assemblies pursuant to a contract with Kvaerner Kleven AS." (Def. Ltr. Br. (December 20, 2000) at 5.) Plaintiffs assert that Ulstein Propeller also sent a representative to Great White Fleet's offices in Ohio in February 1992 to discuss the propulsion systems. This meeting is documented by a contemporaneous fax from Ulstein Propeller acknowl-

edging the meeting and providing material "asked for regarding propulsion and wake evaluation." (Herbert Aff. ¶ 9, Ex. 4.) Plaintiffs do not dispute these detailed characterizations. *See supra* n. 9. Additionally, Ulstein Propeller directed its service engineers to Florida to assess the damage to the propeller system of the FRANCES and to supervise repairs to that ship. (Coleridge Decl. ¶ 2; Rodven Decl. No. 2, ¶ 5.) Plaintiffs allege that Ulstein Propeller sold and delivered the parts necessary to repair the propeller system installed on the FRANCES while it was in Florida. (Coleridge Decl. ¶ 3.) These acts are all related to the allegations asserted by plaintiffs that the propeller systems were faulty.

The totality of Ulstein Propeller's contacts with the United States as a whole demonstrates that it has either transacted business or performed an act in the United States sufficient to satisfy the minimum contacts analysis. I find that when all of Ulstein Propeller's contacts with the United States that are related to this action are taken as a whole, they are sufficient to establish minimum contacts. *Aerogroup Int'l, Inc.,* 956 F.Supp. at 440.

### b. Reasonableness

The second prong of the due process personal jurisdiction test is to determine the reasonableness of the exercise of jurisdiction. *Id.* at 441. The Supreme Court has identified the following factors in analyzing whether an exercise of jurisdiction would be reasonable:

"(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and ef-

---

**10.** Plaintiffs do not contend that the contacts of Ulstein Propeller with the United States as a whole are sufficient to find it present in a continuous and systematic way. *See id.*

fective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Id.* at 441 (quoting *Metropolitan Life Ins.*, 84 F.3d at 568 (citing *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal.*, 480 U.S. 102, 113–14, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987))).

██ Litigating a case in New York would be a burden for Ulstein Propeller, although not an overwhelming one. Based on the contacts of the parties discussed above, Ulstein Propeller reasonably could have expected plaintiffs' assertion of jurisdiction. Moreover, "the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago." *Metropolitan Life*, 84 F.3d at 574. This factor cuts slightly in favor of Ulstein Propeller.

The dispute between the plaintiffs and Ulstein Propeller implicates the interests of the United States, although only slightly so. Only one of the plaintiffs is a resident of the United States. Certain actions related to plaintiffs' cause of action occurred in the United States and were in furtherance of business dealings entered in to by the plaintiffs. The United States has an interest in protecting the business dealings of its residents. However, plaintiffs have failed to allege for Rule 12(b)(2) purposes that Ulstein Propeller's actions have had a substantial effect on United States commerce. Accordingly, this factor weighs only slightly in favor of plaintiffs' assertion of jurisdiction.

Plaintiffs are not citizens of the United States, and only GWF is a resident of the U.S. Plaintiffs have not shown that it is more convenient to litigate in the United States rather than another country.[11] This factor weighs in favor of Ulstein Propeller's motion to dismiss.

██ In evaluating the factor of an efficient administration of justice, "courts generally consider where witnesses and evidence are likely to be located." *Aerogroup Int'l Inc.*, 956 F.Supp. at 442 (internal quotations and citations omitted). Plaintiffs have not demonstrated that the ships with the allegedly faulty propellers are permanently docked in any U.S. locale. Nor have plaintiffs alleged that any of the witnesses or other evidence is located in the United States. Indeed, it seems unlikely that any relevant materials will be found in the United States. Thus, this factor weighs in favor of Ulstein Propeller's motion to dismiss.

Finally, plaintiffs have asserted no policy arguments in their favor which would support a finding that it would be reasonable to subject Ulstein Propeller to the jurisdiction of the United States.

Although plaintiffs have made a showing of minimum contacts, weighing the factors prescribed in *Asahi Metal*, I find that it would be unreasonable to exercise jurisdiction over Ulstein Propeller and that exercising jurisdiction over Ulstein Propeller would offend fair play and substantial justice. *See Aerogroup Int'l Inc.*, 956 F.Supp. at 442. Accordingly, defendants' motion to dismiss Ulstein Propeller is granted.

(b) Ulstein Industrier and Ulstein USA

██ As stated above, plaintiffs have failed to address whether defendants Ulstein Industrier and Ulstein USA are subject to the jurisdiction of any state. Without more, plaintiffs' assertions that Ulstein

---

**11.** Indeed, I note, but do not rely on, defendants' statement, which plaintiffs do not dispute, that the parties have already submitted this dispute to arbitration in London. (Def. Let. Br. (December 20, 2000) at 2, n. 1.)

Industrier advertises in several publications in the United States and attended a trade show in Louisiana are not sufficient to demonstrate personal jurisdiction under the federal long-arm statute or in any state. The federal long-arm statute cannot apply to defendant Ulstein USA[12] which is incorporated in a state and thus subject to the jurisdiction of that state. Accordingly, defendants' motion to dismiss for lack of personal jurisdiction over Ulstein Industrier and Ulstein USA is granted.

### III. Request for Discovery

Plaintiffs have requested additional jurisdictional discovery if it were determined that they failed to make a prima facie showing of personal jurisdiction. In the absence of any prima facie showing of personal jurisdiction, I find that it would be inappropriate to subject defendants to the burden and expense of discovery (which likely would result in a fishing expedition). *See, e.g., COMSAT v. Finshipyards*, 900 F.Supp. 515, 524 (D.C.1995). Plaintiffs' request for discovery is denied.

### IV. Venue

Defendants' motion to dismiss for lack of proper venue is denied as moot.

### CONCLUSION

For the reasons stated above, defendants' motion to dismiss for lack of subject matter jurisdiction is denied, defendants' motion to dismiss for lack of personal jurisdiction is granted, and defendants' motion to dismiss for lack of proper venue is denied as moot. Plaintiffs' request for discovery is denied.

SO ORDERED.

---

**12.** Ulstein USA is now known as UU Inc. and is incorporated in Delaware.